ILLINOIS CENTRAL RAILROAD CO. *v.* J. J. PRICE.

1. MASTER AND SERVANT. *Extra hazardous service. Inexperienced employe. Duty of master.*

    A servant assumes the known, obvious and ordinary risks of his employment, but an employer who, knowing his servant to be inexperienced, requires him to perform dangerous or extra hazardous service, must acquaint him with the peril and the mode of executing the service, unless the danger be plainly apparent.

2. SAME. *Injury to employe. Dangerous coupling. Foreign cars.*

    It is the duty of a railroad company to instruct an inexperienced switchman as to the proper mode of making couplings of foreign cars handled in transportation and supplied with coupling appliances essentially unlike its own, the use of which is more dangerous. Failing in this, the company is liable for injuries to such servant who is required to couple such cars, and, by reason of the defects, is injured.

3. SAME. *Unsafe appliances. Foreign cars. Constitution 1890, § 184.*

    Constitution 1890, § 184, requiring railroad companies to receive and transport each other's cars without unnecessary delay or discrimination, does not require a railroad company to receive and transport foreign cars obviously defective and dangerous to its employes, or exempt it from liability to its employes for injuries sustained because of the defective or unsafe condition of machinery and appliances on foreign cars received by it without inspection, or where by such inspection the defects or dangerous condition could have been discovered.

4. SAME. *Dangerous coupling. Inexperienced switchman. Case.*

    Where plaintiff, an inexperienced switchman, is ordered by the conductor to couple two foreign cars, having coupling appliances unlike those on defendant's cars, and more dangerous, and with which plaintiff is unacquainted, and, without being warned of the danger, attempts to couple them and is injured by reason of their defective condition, which was not apparent to him, the company is liable.

5. PERSONAL INJURIES.  *Damages.  Verdict not excessive.*
   A verdict for $6,500 in favor of a switchman twenty-six years old, earning $60 a month, for injuries received in coupling cars, and resulting in the loss of his right arm, will not be disturbed by this court as excessive, there being nothing to show passion or prejudice on the part of the jury.

6. PRACTICE.  *Variance.· Failure to object.  Jeofails.  Code* 1892, §§ 718, 746.
   Although, in an action for personal injuries, the declaration fails to allege as a ground of complaint the particular act or omission which constitutes defendant's negligence in respect to the injury complained of, if evidence of such act is admitted without objection, it is too late, after verdict, to object because of variance. Code 1892, §§ 718, 746; *Holmes* v. *Preston,* 70 Miss., 152.

FROM the circuit court of Pike county.

HON. W. P. CASSEDY, Judge.

The opinion states the case.

*Mayes & Harris,* for appellant,

Filed a lengthy brief, reviewing and discussing the evidence, and contending that it failed to show any negligence on the part of the defendant, but, on the other hand, showed contributory negligence on the part of the plaintiff; that the case, as relied on by the plaintiff as showing negligence, is not the case made by the declaration; that no connection is shown between the injury and the alleged negligence; that the evidence showed that plaintiff was not injured by unsafe and unsuitable cars of the defendant, but by cars of other roads which, by law, defendant is required to transport; that the failure of defendant to instruct plaintiff as to the hazard of coupling cars of different structure from its own cannot be considered, as it was not alleged in the declaration, and was not an issue tried; that defendant, being bound by the constitution to transport the cars of other roads, is under no duty to inspect them before it receives them.

Defendant was not negligent in transporting foreign cars with bumpers unlike its own.  109 Mo., 187; 67 *Ib.*, 239; 50 Iowa,

680; 88 Ill., 112; 77 *Ib.*, 365; 51 Mich., 253; 45 *Ib.*, 212; 33 *Ib.*, 133; 11 So. Rep., 667; 44 Kan., 612; 21 Hun, 396; 135 Mass., 201; 69 Miss., 642; 63 *Ib.*, 562.

*Cassedy & Cassedy*, for appellee.

Under the circumstances of this case, it was the duty of appellant to instruct appellee as to the proper method of coupling cars with bumpers, and to warn him of the extra danger and hazard attending the coupling.    Being inexperienced, he could not reasonably be expected to understand a new and undisclosed danger produced by the introduction of these foreign cars, which, without warning of any kind, he was ordered by a superior employe of the company to couple.    *Hungerford* v. *Railway Co.*, 41 Minn., 444; *Railroad Co.* v. *White*, 76 Tex., 102; *Railroad Co.* v. *Callbreath*, 66 *Ib.*, 526; *Reynolds* v. *Railway Co.*, 64 Vt., 66; 50 Mich., 70; 118 N. Y., 489; 41 Minn., 439; 44 Cal., 187; 66 Wis., 268; 41 La. Ann., 964; 139 Penn., 42; 9 Fed. Rep., 337.    It is true that appellee may have seen the bumpers as the cars approached, and he may have known that they were foreign cars, but, having experience only in coupling cars without bumpers, the mere sight of them did not necessarily disclose the fact the bumpers would come together at the same time, or before the drawheads met.    It was only the actual collision of the bumpers that revealed to him the risk, the hazard and the danger.    When cars are so constructed that the slightest indiscretion on the part of the employe will prove fatal to him, he should be acquainted with the danger and instructed as to the proper method of performing the duty required of him.    71 Ill., 214; 76 N. C., 320; 81 Me., 572.    It makes no difference that the cars belong to another company.    100 N. Y., 462.

A case could hardly arise more peculiarly for the jury.    All the questions are of fact.    Were the cars in proper and safe condition?    If not, was the negligence of defendant, thus established, the proximate cause of the injury?    Was the plaintiff

negligent, and, if so, did such negligence proximately contribute to the injury? Did he assume the risk? Had he experience? Was he, or should he have been, possessed of knowledge of the risk under the circumstances? These questions were for the jury. Beach on Con. Neg., §§ 448, 449, 450, 451, and authorities cited.

We know of no case where the receiving company is absolved entirely from the duty of inspecting foreign cars. This duty is affirmed in numerous cases, a few of which we cite: 18 Am. & Eng. R. R. Cases, 140; 41 *Ib.*, 259; 15 *Ib.*, 196; 100 N. Y., 462; 94 Mo., 468; 97 Mich., 329; 52 N. W. Rep., 942; 56 *Ib.*, 756; 111 N. C., 482.

Argued orally by *J. B. Harris*, for appellant.

WOODS, J., delivered the opinion of the court.

This action was instituted for the recovery of damages for injuries sustained by plaintiff by reason of the negligence of appellant. In his declaration, it is alleged, in substance, that he was a switchman in the yards of the appellant at McComb City, and subject to the orders of the yardmaster and switch engine foreman, the superior agents of defendant at said town; that, in attempting to make a coupling of two cars, in the making up of a train in the yards, and while obeying the orders of his said superiors so to do, he had his arm crushed between the cars, whereby the amputation of his hand was necessitated, and he rendered unfit for service in railway employment; that the cars which he attempted to couple in the making up of the train were placed in said train under the direction of his superiors, and that he himself, in obeying his superior's orders and attempting to make such coupling, was exercising ordinary care and caution; that said cars were defective and of improper construction, and were dangerous to those handling them in operating the railroad; that the drawheads and bumpers of said two cars which he was ordered to couple, and which he attempted to couple, were improperly

constructed, and the link stop of one of the drawheads was wanting; that defendant was negligent, and failed in its duty to plaintiff, in furnishing him such defective and dangerous cars to handle; that the defects in these cars and appliances, if not known to defendant, could have been discovered by the ordinary methods of inspection, the same being patent; and, finally and in general terms, that by the negligence of defendant and its said superior agents, the injuries complained of were received. The defendant pleaded the general issue, and contributory negligence on plaintiff's part. To the latter plea, plaintiff replied denying his negligence. Verdict and judgment for plaintiff for $6,500, from which defendant appeals.

It is contended by counsel for the railroad company that, the evidence showing undisputedly that the two cars said by appellee to have been defective and dangerous, and in attempting to couple which he was injured, were foreign cars, one being a Peerless Tank Line car and the other a Georgia Pacific coal car, and that inasmuch as "all railroad companies shall receive and transport each other's passengers, tonnage and cars, loaded or empty, without unnecessary delay or discrimination," under the requirement of § 184, constitution of this state, defendant was not bound to either repair or inspect these cars of other roads before receiving them for transportation over its own road. As this proposition, if maintainable, ends the controversy, let us first give it consideration. Let us, however, guard the discussion against drifting into the erroneous proposition laid down by the learned counsel for the railroad company, when they assert that "there seems to be only one question in the case, and that is, was the defendant negligent in transporting foreign cars with bumpers over its road?" That is not the bone of contention. Counsel for appellee does not rely upon the converse of that proposition, and, if they did, we should pass it without serious remark, as it is so manifestly opposed to reason and authority as to need no confutation. The real question is, may defendant receive from other roads,

for transportation over its lines, cars which are defective and dangerous, and, without inspection or repair, transport the same, and, with immunity from liability to its servants who may receive injury from compulsory handling of such cars, require its employes to assume the hazards of such transportation? We confess our inability to see any reason for imposing liability upon a railway company for subjecting its servants to perils and injuries in the use of its own machinery and cars, and exempt the same company from liability to the same servants because of negligence on its part in using dangerous cars of another railway company. What satisfactory reason can be assigned for requiring the railroad to furnish its servants with suitable and safe machinery and appliances of their own for the discharge of their duties to their employer, and yet permit the railroad to receive unsafe and dangerous cars from any road in the United States, and, without responsibility to its servants, constrain them to perform their duties to it with cars, appliances and machinery, however dangerous, and however obvious the unsafeness and dangerousness of the cars, appliances and machinery? The constitutional provision which requires all railroads to receive and transport each other's cars, etc., without unnecessary delay or discrimination, is a simple corollary from the previous declaration of the same section of the constitution that railroads are public highways. It is impossible to conceive that it was the intent of the constitution framers to exempt from liability a railway so negligent to its servants as to furnish them dangerous machinery and appliances, when, in every other line of that instrument relating to railways and their employes, the declared purpose to widen and enlarge the accountability of the railway went to the extent of almost wholly destroying the fellow-servant doctrine. Being the owners of public highways in this state, railroads are very properly required to receive from each other cars to be transported without unnecessary delay, but it is impossible to believe that they are thereby required to receive and transport cars however

obviously defective and dangerous, and thereby subject its serv-
ants, and the traveling public on its trains, to certain peril and
disaster.

We need not attempt to review all the evidence, for, in our
opinion, that is unnecessary.    There is some evidence showing,
or tending to show, that the coupling appliances were, in fact,
defective, out of repair and dangerous.    There is much ev-
idence opposed to this.    We need not compare nor reconcile
nor pass on the weight or character of this opposing evidence:
the jury has done that.    That the appellee was a switchman
without experience, is not denied; that drawheads with bumpers
were not used on any car belonging to defendant, is universally
agreed; that appellee knew how to couple cars on appellant's
railway—cars without bumpers—is shown; that he had never
seen such cars as those he was ordered to couple on the day he
received his hurt, he testifies to without contradiction; and
that the coupling which he attempted of these cars with bum-
pers, on the day he lost his hand, was his first effort to make
such coupling, is certain; that he made the attempt to couple
in the manner he employed in making couplings of his em-
ployer's cars, and that such manner was the proper one in
coupling defendant's cars, is clear also; and that no instructions
were ever given him as to the proper mode of making couplings
of foreign cars, and no notice given him of the extra hazardous
nature of making the coupling in question, is uncontroverted.
The questions that now arise, are, was it the duty of the rail-
road, under the circumstances just disclosed, to instruct its in-
experienced servant as to the proper and comparatively safe
mode of making couplings of cars equipped with appliances
for that purpose essentially unlike those used on its own cars,
but the use of which involved greater danger than the use of
its own appliances for couplings ?    And should the superior serv-
ants have warned the appellee of the extra hazards he was re-
quired to encounter, under the orders of his superiors, in at-
tempting the unknown and untried coupling ?.    To avoid mis-

construction, it must be remembered that the declaration and proofs made it manifest that the defect and danger of the couplings of the foreign cars were patent, and were known to appellant and its superior servants, or might have been made known by ordinary inspection. There is no case of latent defects and dangers, nor defects and dangers concealed in loaded cars.

Just here, however, the appellant contends that the failure of the railroad to instruct its inexperienced switchman as to how this particular coupling should be made cannot be considered by us, because that was not the ground of complaint made by the declaration, and is not the negligence charged. The declaration was defective in not distinctly averring the inexperience and ignorance of appellee and the failure of appellant to instruct or warn him, but it did aver, in general terms, injury because of appellant's negligence in furnishing dangerous cars or appliances. The appellant pleaded the contributory negligence of appellee, and he replied denying this plea. On trial, anticipating appellant's evidence that he had placed his arm between the bumpers, where inevitably it would be crushed when the cars came together in the making up of the train, the appellee offered evidence to show, in avoidance of the effect of this anticipated evidence, that he was inexperienced and ignorant of the proper method of making the coupling that day required of him, and that he was not warned of the extra hazardous nature of the service required by his superiors, nor instructed, at all, how to make the coupling. The railroad did not object to the introduction of this testimony, but joined issue with its adversary, electing to take the chances of a favorable verdict on the whole case as presented, including this evidence of which it now complains. The averments of the declaration did not show one cause of action and the complained of evidence support another and different cause of action. The appellant did not then so think. It did not object to this evidence as incompetent, and, if it had, the court would have permitted

the appellee instantly to amend his defective pleading. Section 718, code 1892, declares that "a variance between the allegation in a pleading and the proof shall not be deemed material, unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits; and where it shall not be shown to the satisfaction of the court that the party has been so misled, an immediate amendment of the pleadings may be made without costs, and without delaying the cause. If the party have been so actually misled, an amendment may be allowed on such terms as shall be just."

Among many other provisions of our statute of jeofails, § 746, code 1892, it is declared that a judgment shall not be reversed, after verdict, "for omitting the averment of any matter without proving which the jury ought not to have given such verdict." In considering this statute, it was said, in *Holmes* v. *Preston*, 70 Miss., 152: "If a defectively stated case is well proved, the verdict cures the defect of the pleading, and so, after verdict, nothing to the contrary appearing in the record, it would be presumed that a case was proved entitling the successful plaintiff to the verdict secured," etc. See the same case, 71 Miss., 541.

Passing now from this point, we return to consider the question: Was it appellant's duty to instruct its inexperienced switchmen as to the proper mode of making the coupling of the two foreign cars, which were supplied with appliances unlike its own for coupling, and in using which the danger was greater than in using its own? The answers to this important question, by courts of last resort, have not been the same; and there is high authority for the views of counsel for appellant, though opposed, we think, to the current of decision. Every servant undertakes to assume the known and obvious and ordinary risks incident to his employment, but if the employer require the servant to undertake the performance of a dangerous or extra hazardous work, demanding caution and more than usual skill, the employer must give the servant proper instruction as to the

method of executing the service required, and notice of the danger to which he will be exposed, if he knows of the inexperience or ignorance of his servant in and about the service to be performed. These elementary rules are to be qualified to this extent, however, viz.: if the risk and danger to which the service required to be performed exposes the servant are plainly apparent, both the instrumentality to be employed by the servant in performing the required service and the danger to be encountered in the use of the instrumentality being obvious, so as that there shall cease to be necessity for instruction or warning, the employer may remain silent, and leave the servant to avoid clearly seen danger by the reasonable use of his own' faculties. It is said that the chief difficulty in the administration of justice consists in applying general principles of perfectly recognized law to the ever varying phases of different cases. If, therefore, we can satisfactorily apply the rules of law above laid down to the facts of this case, the solution of the question in hand should be easy. The case brings before us a young man just beginning his chosen vocation, with an experience as a switchman covered by a little space of five days. The couplings of cars owned by his employer were unlike those affixed to the two cars by which he was injured. The former he had learned to couple, and the method of doing so safely was known to him; the latter he had never seen nor attempted to couple until the day he received his injury. On that day, under the direction and in the presence of his superiors, he undertook to couple these two cars in the only manner with which he was acquainted. He shows that his superior "did not call his attention to these cars when he ordered him to couple them;" and he further says, "I did not notice anything unusual to make them dangerous, or I would not have gone in there."

If it be argued, as it is, that the appellee must have seen the drawheads and bumpers projecting from both cars when he went in to make the coupling, hurriedly (which cannot be said to be certainly proved), and that he saw their unlikeness to any

he had ever seen and used before, he was bound to take such obvious instrumentalities, and their dissimilarity to those he knew how to use in coupling, as ample warning of the danger to which he was called to expose himself, and he should have withdrawn, it is to be answered: (1) He may have seen the drawheads and bumpers casually, and not observed them so as to form any opinion touching their construction or use. (2) He may have even observed them, and yet, in his ignorance and inexperience, he may have supposed that the drawheads would not be driven back by the impending impact of the cars as they came together, but would remain fixed, and prevent the bumpers coming together, as seems not impossible, since single drawheads are coupled with safety in the manner he employed in his attempt to couple the double drawheads in this case. Or, (3) he may have reasoned, as he had a right to do, that his superior would not have sent him into an unaccustomed place of danger to do the service then required without giving him some instruction or warning, unless that coupling was to be made in exactly the same manner as he made the coupling on his employer's cars. It is one thing to say the appellee must have seen—did, in fact, see—the drawheads and bumpers on the two cars in question, and it is quite another and distinct thing to say he saw the hidden dangers in the attempt of an inexperienced servant to use the seen appliances. That he did not see or realize the danger, is, we think, beyond dispute. See *Reynolds* v. *Railroad Co.*, 64 Vt., 66; *Russell* v. *Railway Co.*, 32 Minn., 230; *Hungerford* v. *Railway Co.*, 41 *Ib.*, 444; *Railway Co.* v. *White*, 76 Texas, 102; *Combs* v. *Cordage Co.*, 102 Mass., 573; *Sullivan* v. *Manufacturing Co.*, 113 *Ib.*, 396; *Railroad Co.* v. *Frowley*, 110 Ind., 18.

The verdict of the jury is for a large sum, but the appellee suffered a great loss. The amputation of his right hand permanently disabled him from the further pursuit of his vocation in life. He was just in the morning of his manhood, and was then earning, in the humble rank in which, as a beginner, he

found himself, $60 per month. That the finding of the jury was the product of passion or prejudice we are not led to believe, and we do not feel authorized to disturb the verdict.

*Affirmed.*