## LOUISIANA OIL CORPORATION *v.* DAVIS.

(Division B.   Jan. 28, 1935.)

[158 So. 792.   No. 31542.]

Watkins & Eager, of Jackson, for appellant.

128

Hall & Hall, of Columbia, and **Grayson B. Keaton,** of Picayune, for appellee.

Argued orally by **W. H. Watkins, Jr.**, for appellant, and by **Lee D. Hall**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action in the circuit court of Pearl River county against appellant to recover damages for an injury she received by falling over a concrete block about thirty inches square and five inches high, alleged to have been negligently maintained by appellant at one of its filling stations in the town of Picayune in said county, and recovered a judgment in the sum of three thousand dollars. From that judgment, appellant prosecutes this appeal.

There is little, if any, conflict in the material evidence on the issue of liability.

Appellant held under lease what is commonly known as an automobile filling station in the town of Picayune; the station was constructed and maintained in the form of many such stations, in them there is sold and distributed gasoline, oils, and other petroleum products used in the operation of automobiles. In addition, sometimes automobile accessories, including tires, are sold. The filling station in question was located at the intersection of Canal and Martin streets in the town of Picayune. Canal street is on the north and Martin street on the east. The filling station was in the triangle made by the intersection of these streets. The building consisted of a filling station proper with the necessary underground tanks and two gasoline pumps, and, in addition, at the

rear of this was a retail grocery store. The front of the filling station was a right angle triangle formed by the intersection of the sidewalks of two streets; the base of the triangle was the wall of the filling station; this was covered by a shed which was part of the main building; the sides of the triangle were something like thirty or forty feet long. There were two doors entering the filling station proper from the triangle, and one entering the grocery store, and there was a door between the grocery store and the filling station. This right angle triangle was paved with concrete; it was of sufficient depth and width to hold at least two automobiles abreast and still have ample depth left for customers to go back and forth and move around the station. Appellant employed one Carrier to conduct the station. The contract between them was in writing, and it provided that appellant would furnish Carrier gasoline and other petroleum products, including kerosene to be used in the operation of the filling station, the title to which was reserved in appellant until sold by Carrier. Carrier was charged with the invoices. Appellant fixed the prices of the products and reserved the right to approve the credit sales.

Carrier operated the retail grocery store in the rear of the filling station along with the other business. His wife helped him carry on the business. Besides groceries, he sold in his store kerosene furnished by appellant. The container holding the kerosene was in the filling station, not in the grocery store.

Some time before appellee's injury, appellant maintained three gasoline pumps in the triangle for supplying his customers, two for high grade gasoline and one for lower grade. One of these pumps was near one of the doors entering the station building, it had been placed on a concrete foundation about thirty inches square and five inches high, which foundation was made into the concrete pavement of the triangular front. Having no use for two pumps to dispense high grade gasoline, some months

before appellee's injury appellant had the one located near the door removed, leaving the concrete base. This concrete base was either against the wall of the station building or so near that it appeared to be against it. There were photographs in the record showing the building and the triangular front, and the concrete base over which appellee stumbled and was injured.

Appellee's injury occurred between nine and ten o'clock at night in February. She lived less than a block away and was throughly familiar with the filling station and its equipment and all the surroundings. She knew of the concrete base that had been left in front; she was a regular customer of the Carriers' grocery store. On the night of the injury, she went there to buy some milk, mayonnaise, and kerosene; she had with her an empty can for the kerosene; she went in the store to make her purchases. Mrs. Carrier attended to the sale to her of the mayonnaise and milk and Mr. Carrier of the kerosene. He took the empty can, went through the door of the partition wall between the grocery store and the filling station into the filling station where the kerosene container was located, and proceeded to fill the can, while doing so the kerosene ran over and was running down the sides of the can. Mr. Carrier preferred not to take it into the store and deliver it to appellee in that dripping condition, so he went through the filling station and out onto the triangular front and put the can down close to the concrete foundation, probably in about fifteen inches of it. He went back and told appellee what he had done and why he had done it and as she went home she could stop in front and pick up the kerosene can. When appellee was ready to go, she took her other purchases from the store, went out on the triangular front, found the kerosene can where Carrier had told her she would, picked it up and was proceeding toward Martin street when she struck her foot against the concrete foundation and fell and injured herself.

She testified that she knew the foundation was there, but at the time had temporarily overlooked the fact. She also testified that the lights of the filling station had been turned off, and so did Carrier testify. Carrier stated that he had closed the filling station and turned the lights off some little time before appellee came.

Appellant contends that, conceding that the maintenance of the concrete foundation where it was was negligence per se, still there is no liability because appellee was a mere licensee and not an invitee. There is no merit in this contention. The evidence showed that although Carrier sold some or all of the kerosene through his grocery store, nevertheless, the kerosene was in the same category as the other petroleum products—it belonged to appellant and was sold by Carrier as appellant's agent regardless of whether the sales were made through the grocery store or the filling station.

The court refused appellant's request for a directed verdict. Except for the testimony, to which the parties appear not to have attached much importance, that when the injury occurred the filling station lights had been turned off, the court should have granted the request.

By appellee's instructions the court submitted to the jury the question of whether or not the sole fact that the concrete foundation was permitted to remain constituted negligence. In other words, regardless of whether it was day or night, and, if night, whether the triangular front was properly lighted so that the foundation could have been easily seen, the court left to the jury the question of negligence.

It is manifest from the evidence, especially the three photographs which are in the record as part of the evidence, that the concrete foundation, in the day as well as at night when the triangular front is properly lighted, is a perfectly harmless thing. There would be no more probability of one stumbling over it and falling than there would be of running against an automobile standing there

at one of the gasoline pumps. With two or three automobiles abreast in the triangular front, there would still be ample room for numerous customers to move in and around the station without any probability whatever of stumbling against this concrete foundation; there would be no excuse in the world for doing so. However, if not properly lighted at night, there would be a different question. We think it would be a question for the jury whether the concrete foundation in connection with the want of sufficient lights would constitute negligence. In none of the instructions was that question submitted to the jury. On the contrary, the court, in the principal instruction given appellee, the giving of which is assigned as error by appellant, told the jury that it was a question for them whether the maintenance of the concrete foundation alone rendered the passageway dangerous to customers. It was error, and harmful error, to give this instruction. In effect, it informed the jury that the maintenance of the foundation was negligence per se, regardless of whether or not the way was lighted.

Appellee based her right to recovery alone on the proposition that the maintenance of the concrete foundation was negligence per se. There is no mention of want of lights in the declaration, and, in the evidence, the proof that the station lights had been turned off seems to have been put in rather incidentally, not with the idea that it had any significance. There was no objection, however, by the appellant to the proof of that fact on the ground that it constituted a variance between the declaration and the proof. A variance between the cause of action stated and that sought to be proven can only be availed of by objection to the testimony, otherwise it will not be considered on appeal. Section 568, Code of 1930; Kimbrough v. Ragsdale, 69 Miss. 674, 13 So. 830; Illinois C. R. R. Co. v. Cathey, 70 Miss. 332, 12 So. 253; Illinois C. R. R. Co. v. Price, 72 Miss. 862, 18 So. 415; True-Hixon Lbr. Co. v. McDonough, 154 Miss. 720, 123 So. 855.

We repeat, leaving out the light proposition, there was no question for the jury. A person stumbling and falling over that foundation in the daytime or in the nighttime, if the way was properly lighted, would have himself alone to blame, and that would be true if the station lights were off and still the way was properly lighted by the street lights.

Reversed and remanded.