MERIDIAN GRAIN & ELEVATOR CO. *v.* JONES.

(Division B. Sept. 28, 1936. Suggestion of Error Overruled Oct. 26, 1936.)

[169 So. 771. No. 32253.]

Gilbert & Cameron, of Meridian, for appellant.

**Walker Broach, Jr.,** of Meridian, for appellee.

Argued orally by **V. W. Gilbert**, for appellant, and by **Walker Broach, Jr.**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action in the circuit court of Lauderdale county against appellant to recover damages for an injury suffered by him (chronic bronchitis) alleged to have been caused by appellant's failure to furnish him a reasonably safe place to work.

For a good many years appellant has operated a plant in the city of Meridian for the manufacture of mixed feeds for horses, cattle, and chickens, the principal ingredients of which are oats, corn, alfalfa meal, and molasses. The plant is rather large. Appellee was one of the employees from January, 1921, to March, 1931. Most of the time he was in charge of the horse feed unit. After appellee quit the employment, he developed chronic bronchitis, diabetes, high blood pressure, and hardening of the arteries. The injury for which he sues is chronic bronchitis; the suit was not brought until four and one-half years after he quit appellant's employment. He claims the ailment was caused by breathing dust generated by the operation of the plant, and that such dust caused the plant to be an unsafe place to work. The

ground of liability is that appellant by the exercise of reasonable care could have prevented the dust.

It would be well to keep in mind the definitions of organic and inorganic dust; organic dust is that which is made from plant life; inorganic dust is mineral dust and comes from rock, coal, and other minerals, and is often referred to as silica. It is agreed among the expert witnesses that the breathing of mineral dust is harmful, and may cause chronic bronchitis and other respiratory diseases; it sticks—does not dissolve—and irritates. The controversy is as to whether the breathing of organic dust is harmful.

Before going into the evidence, it would probably be well to state the governing principles of law. The master is not the guarantor of the safety of the place to work; the obligation to furnish a safe place is not an absolute one. The master is only required to furnish a reasonably safe place, and that obligation is modified by the phrase "reasonable care;" in other words, he is only required to use reasonable care to furnish his servant a reasonably safe place to work. If the place is not reasonably safe, still there is no liability on the part of the master if he has used reasonable care to make it reasonably safe. McComb Box Co. v. Duck, 174 Miss. 449, 164 So. 406; Hooks v. Mills, 101 Miss. 91, 57 So. 545; Anderson v. McGrew, 154 Miss. 291, 122 So. 492; Barron Motor Co. v. Bass, 167 Miss. 786, 150 So. 202; McLemore & McArthur v. Rogers, 169 Miss. 650, 152 So. 883; Gulfport Creosoting Co. v. White, 171 Miss. 127, 157 So. 86; Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

Appellee's evidence showed he had chronic bronchitis, and that during the ten-year period of his employment there was a great deal of dust in the plant caused by its operation and coming principally from the conveyors and elevators; that he complained of this

to the superintendent. Appellee testified, and so did his witnesses, Winslett, Ross, Bullock, and Clay, who had been employed in the plant, that at times the dust was very dense and at other times not so bad, that it came from the feedstuff as it was moved in the conveyors and elevators, and that it could have been prevented, not entirely, but to a large extent, by certain repairs and additions to such conveyors and elevators.

Appellant used as witnesses Wright, manager of a mixed feed plant at Jackson in this state; Steed, the engineer who designed and sold most of the machinery in appellant's plant; Locker, who was engaged in the manufacture of cereal products in Memphis, Tenn.; Leonhard, who had had twenty years' experience in designing and supervising such plants; Guyton, who worked in appellant's plant for several years and now engaged in a similar plant in Memphis, Tenn.; Broomfield, who was feed and fertilizer inspector for this state from January, 1928, to June, 1935; Johnson, fire insurance commissioner and inspector for the rating bureau of this state; Sturges, the owner of a mixed feed mill at Meridian in this state. They all testified that appellant's plant was a standard plant—in all respects properly equipped; that in its operation the generation of dust was unavoidable, but that appellant's plant generated no more dust than other standard plants; they all agreed that the history of the operation of such plants showed that the dust generated from the handling of the feedstuffs was harmless.

Expert medical testimony was used by both sides. Appellee introduced Drs. Stingily, Key, and Robinson; they testified that in their judgment chronic bronchitis might be caused by the constant breathing of organic dust. Appellant introduced Drs. Cleveland, Wilson, Gully, Bourdeaux, Lewis, and Boswell, all of whom testified that organic dust, the character of dust generated in appellant's plant, was harmless to those working in it; that

much of it was expelled from the respiratory system by coughing, and that not expelled was absorbed and passed out of the system through the usual channels; that that, however, was not true of inorganic dust, that it stuck where it landed and caused irritation which might result in chronic bronchitis and other respiratory diseases. Dr. Boswell, for many years superintendent of the State Tuberculosis Sanitorium, testified that he had examined thousands of patients for chest diseases, and he knew from experience and from medical authorities which he had read that the breathing of organic dust was harmless, while the breathing of inorganic dust was not, and that, where they were mixed, the combination was still harmless, unless there was at least eighty-five per cent. "pure silica"—inorganic dust. Dr. Boswell testified further that for several years he had operated a mixed feed plant in connection with the sanitorium similar to the appellant's and that it generated dust, but it was organic dust, and therefore harmless.

It was undisputed in the evidence that appellant's was a standard plant operated in the customary way, generating no more dust than other like plants, and that the dust generated was organic dust, not inorganic dust.

Now, grant that the medical testimony on behalf of appellee is true, that organic dust is capable of producing chronic bronchitis; in other words, that appellant failed to furnish appellee a reasonably safe place to work. This alone did not make out a case of liability. Appellee was required to go further and show that the unsafe place was the result of appellant's failure to exercise reasonable care in providing the place. In the construction and operation of its plant, appellant was governed by the experience of those engaged in the same business. There was no evidence that appellant knew, or had any intimation, that there was a difference of opinion in the medical profession as to whether organic dust was harmful. Negligence is the failure to do some-

thing which a reasonable person, guided by the consideration which ordinarily regulates the conduct of human affairs, would do, or the doing of something which a prudent and reasonable man would not do. "Now a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible." Pollock on Torts (9 Ed.), p. 41.

There was no evidence whatever tending to show that appellant should have reasonably anticipated the harmful effects of the dust. Appellant had the right to stand on the history of the business, which showed the dust generated by such plants to be harmless. It was not required to consult medical experts about a matter unquestioned in the business. There being no evidence that appellant should have reasonably anticipated the harmful effects of the dust, there was no case for the jury. Appellant was entitled to its requested directed verdict.

Reversed, and judgment here for appellant.