MAUNEY v. GULF REFINING Co.

(In Banc. May 25, 1942.)

[8 So. (2d) 249. No. 35007.]

(In Banc.   Oct. 5, 1942.)

[9 So. (2d) 780.]

Jas. A. Cunningham, Sr. & Jr., Floyd W. Cunningham, J. Enoch Cunningham, Gettys Lee, J. S. Finch, and Donald Franks, all of Booneville, for appellant.

Thos. E. Pegram and Wm. H. Anderson, both of Ripley, and Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, Tenn., for appellees.

Argued orally by **Jas. A. Cunningham,** for appellant, and by **Thos E. Pegram,** for appellees.

**Alexander, J.,** delivered the opinion of the court on motion.

The motion denominated a motion for diminution of the record will be treated as a motion to strike certain parts of the record, since it does not suggest that there has been any diminution of the record by omission of necessary pleadings but that certain items are improperly included.

The motion will be sustained as to the following specified items: Nos. 6, 10, 11, 12, 13, and 14, being, respectively, motion to dismiss, order on said motion, original appeal

bond in former hearing, citation on original appeal, mandate, and former opinion of the court.

Sustained in part and overruled in part.

**Griffith, J.**, delivered the opinion of the court on merits.

Appellee Gulf Refining Company is a wholesale distributor of gasoline, and Tapp, another appellee, was the agent in charge of the tank motor car which, on the afternoon in question, was delivering gasoline to a filling station on the northwest corner of Walnut and Commerce streets in the town of Ripley. During the process of the delivery a fire was suddenly started, which rapidly spread to the tank car and to the filling station itself. Many people were nearby; and about all of them ran from the scene, raising loud shouts of fire, and that the tanks were about to blow up, and the whole town of Ripley with them.

Appellant was in a cafe operated by her and her husband, and which was situated on the northeast corner of Walnut and Commerce streets, and about fifty feet across Commerce street from the filling station. When appellant heard these shouts she went to the front of her cafe, and seeing the fire and still hearing the shouts, she turned to get her two-year-old child, then also in the cafe, and about five feet away; and being greatly fearful of the safety of the child, her purpose was to flee from the cafe when she had got the child in her arms. In her hurry to get to the child she fell over a misplaced chair, and as a result of the fall she suffered a miscarriage. She sued by attachment in chancery, contending that the fire was the proximate cause of her misfortune. After a full hearing the chancellor dismissed the bill. While perhaps immaterial, it may be mentioned by way of completion of the picture, that the fire did not spread to the cafe.

The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who does a particular act which results in injury to

another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, D'Antoni v. Albritton, 156 Miss. 758, 766, 126 So. 836; Williams v. Lumpkin, 169 Miss. 146, 152, 152 So. 842; but that the actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities. Illinois Cent. R. Co. v. Bloodworth, 166 Miss. 602, 617, 145 So. 333; Burnside v. Gulf Refining Co., 166 Miss. 460, 470, 148 So. 219; Shuptrine v. Herron, 182 Miss. 315, 180 So. 620. This rule is affirmed in one way or another in cases which will run into the hundreds in this state.

In Gulf Refining Co. v. Williams, 183 Miss. 723, 185 So. 234, it was pointed out that in speaking of probable results as applied to foreseeability it has not been meant to include only those more apt to happen than not to happen, but embraces those which the negligent actor should have foreseen as something likely to happen, although the likelihood may not amount to a comparative probability; but in the same case it was again admonished that more than a remote possibility is necessary to fulfill the requirements to the rule of liability,—that the likelihood which furnishes the essential ligament between the negligence and the injury must be one of weight and moment.

The settled law in this state may be summarized in the form of a diagram, as follows: The area within which liability is imposed is that which is within the circle of reasonable foreseeability using the original point at which the negligent act was committed or became operative, and thence looking in every direction as the semidiameters of the circle, and those injuries which from this point could or should have been reasonably foreseen as something likely to happen, are within the field of liabil-

ity, while those which, although foreseeable, were foreseeable only as remote possibilities, those only slightly probable, are beyond and not within the circle,—in all of which time, place and circumstances play their respective and important parts.

The difficulty is not in the rule, but in applying the facts of a particular case, and in determining whether the facts bring the case within the circle which limits the rule, or whether they fall beyond it. And always this difficulty is heightened by the pressure of argument to the effect that so long as the force of the negligent act is still traceable as being of some effect, the circle of liability will be large enough to include any injury thus traceable to the original wrong, thereby losing sight or seeking to put out of view that mere possibilities are never within the circle, although traceable to the cause within it. Those so contending stand on the vantage ground of what has happened, and look back in one direction from effect to cause, whereas the rule with which they are dealing is one which looks forward, not in one direction, but in all directions, and not to what has happened, but to what is likely to happen,—from cause to probable effect. The actor does not have the advantage as he thus looks forward in all directions as to what is likely to happen as compared with him who looks backward, in one direction only, upon the picture after it has been finished.

In such a situation, as indeed in most situations, the principles of the common law must be kept within practicable bounds and so as not to occupy an attitude which would place it over and above the heads of those who must carry on the every day affairs of life. Hence, the law must say, as it does, that ''care or foresight as to the probable effect of an act is not to be weighed on jewelers' scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations,'' Illinois Cent. R. Co. v. Bloodworth, supra, 166 Miss., page

618, 145 So. page 336; and that it would impose too heavy a responsibility for negligence to hold the tort feasor accountable for what was unusual and unlikely to happen, or for what was only remotely and slightly probable. 38 Am. Jur., p. 713, sec. 61. As said by this court in Meridian Grain, etc., Co. v. Jones, 176 Miss. 764, 776, 169 So. 771, 772, quoting Pollock on Torts (9 Ed.), p. 41: "A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjective be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible."

With these considerations in view, we may concede, but without so deciding, that (1) the starting of the fire and the spread thereof was through the negligence of appellees, and that (2) appellees should have foreseen as a likelihood that (a) all bystanders would flee from the immediate vicinity, and in so doing would raise a shout of fire and a clamor that the tanks are about to blow up and the town with them; that (b) appellant, who was on the inside of the cafe across the street on the adjoining corner, would hear this hue and cry, and would come to the front of the cafe to see what was happening, and that (c) upon so ascertaining she, too, would flee from the scene or from that immediate vicinity.

So assuming, we arrive at the question (d) whether appellees can, within the rule aforesaid, be held to the liability of having been obliged to foresee, as something likely to happen at that distance away, taking also into consideration the circumstances of time, that appellant in her preparation for departure would run over a misplaced chair in her own place of business, this being the actual or immediate agent of her injury, or whether this

fallen chair and her running over it was a mere possibility, so far as foreseeability is concerned,—something not naturally or ordinarily incident to such a sequence of events, something which although, of course, possible was nevertheless not likely to happen as a likelihood of weight and moment; and this question as to liability we must answer in the negative.

We have so answered under the law as we interpret it, but the equities of the particular case run with the law when the case is examined on its intrinsic merits. Appellant replied in response to one of the interrogatories that she was in control of herself at the time she fell over the chair, but that she was hurriedly trying to get to her child, about five feet away, and did not see the chair. If appellant didn't see a chair in her way in her own place of business, it would impose an inadmissible burden upon appellees to say that they should have foreseen from across the street and through the walls of a building on another corner what appellant didn't see right at her feet and in an immediate situation entirely familiar to her. Suppose she had run to the sidewalk and thence against a lamp post, or into the street and against a parked automobile. Or suppose she had run into a pedestrian, injuring him. These remote eventualities could be multiplied almost without number.

It is urged that the chancellor placed his decision on the ground that the causal connection between the negligence and the damage was broken by the intervention of independent and responsible human acts, and that, therefore, the injury was not the proximate result of the negligence; and from this it is argued that he did not decide the case upon the issue upon which we are acting in affirming the decree, and that we should remand the case for a finding of the facts upon which we have here proceeded. We have stated the facts bearing upon the latter point as disclosed by the testimony of appellant and her own witness, disregarding that of appellees.

Upon her own facts we think she has no case, and we can and should affirm in that situation, similarly to the course taken when we affirm on the giving of a peremptory instruction to a jury.

Affirmed.