BASYE *v.* ODOM.

4-6989 · 168 S. W. 2d 1092

Opinion delivered March 8, 1943.

424

*Graves & Graves,* for appellant.

*John P. Vesey,* for appellee.

McHANEY, J. Appellants, Guy E. Basye, W. C. Bruner and R. M. Bruner, are partners and are engaged in the manufacture of ax handles in the city of Hope, Arkansas, under the firm name of Bruner Ivory Handle Company. Appellee became an employee of appellants in March, 1937, and worked for them in the handle plant about seven months in that year, about the same time in 1938, nearly all of 1939 and three months in 1940. He quit work because of illness which has since been diagnosed as bronchiectasis which is a disease causing dilation of one or more of the large bronchial tubes.

He brought this action against appellants to recover damages for his illness and disability. He alleged that the room in which he was required to work was filled with a fine, powdery dust, caused by the manufacture of ax handles, that completely filled the air, the breathing of which caused him to develop tuberculosis, sinus trouble and bronchiectasis, and that he did not know such dust was injurious to his health, but that appellants did know of this danger or, by the exercise of ordinary

care could have known it. He further alleged "that said unsafe place in which this plaintiff was required to work —was the sole proximate cause of the injuries to this plaintiff's health above described"; that by reason thereof he is totally and permanently disabled, and that his disability was caused by reason of said unsafe place to work. He prayed damages in a large sum. Appellants answered with a general denial and a plea of assumed risk. Trial resulted in a verdict and judgment against appellants in the sum of $2,500 and they have appealed.

The action is based on the alleged ground of negligence that appellants failed to exercise ordinary care in providing appellee with a reasonably safe place in which to work. It is undisputed that appellee is afflicted with bronchiectasis and is totally and permanently disabled. The mere fact that he is so afflicted does not entitle him to recover against appellants. Before he would be entitled to recover he must first prove by a preponderance of the evidence that his bronchiectasis was caused by, or was a result of, his breathing wood dust arising from the shaping and polishing of the handles on the machines, called handle grinders, or from sand dust arising from the sand belts used on machines to shape and polish handles, or from both; and, second, he must prove by a preponderance of the evidence that appellants failed to exercise ordinary care to furnish him a reasonably safe place in which to work. Even though appellee's malady was caused or ensued because of his breathing the dust, this fact alone would not justify a recovery against appellants, since injury to an employee alone cannot be the basis of a personal injury action. It must be shown that the injury resulted by reason of the negligence of some one for whose acts the employer is responsible, and there is no presumption of negligence from the mere fact of injury. The presumption is to the contrary.

The evidence in this record to prove that appellee's injury was caused by breathing dust in appellant's factory is very meager. He introduced only one physician witness, Dr. Gowen, from Louisiana, who examined appellee in December, 1941, and who testified that he did

not think wood dust would cause appellee's condition, but there was a strong probability that silica or sand dust would; that the wood dust would cause a blocking of the bronchial tubes, and after being so blocked, the sand dust might cause the bronchiectasis. He did not state that the dust caused it. When asked what are some of the causes for it, he said: "There seems to be a difference of opinion. It might be from the fact that some individuals' bronchial tubes are not as developed or as strong as others. Either infectious disease or some irritating substance, either chemical or physical." He said most of the cases are caused by infection and that out of possibly several hundred cases he had seen, none of them was caused by wood dust. Appellants introduced several physicians who testified that this disease could not be caused by breathing dust in appellants' plant.

But assuming, without deciding, there was sufficient evidence to go to the jury on this question, we are of the opinion that appellee wholly failed to prove negligence on the part of appellants in failing to exercise ordinary care to furnish appellee a reasonably safe place in which to work. Appellant and a witness for him testified there was a lot of dust in this plant, but all the witnesses agree that appellants, soon after they purchased this plant at Hope, installed a modern, up-to-date blower system to pick up or catch the dust from each machine and blow it away and that this system took care of about 95 per cent. of the dust. They also built a new plant in 1937, called the Ash Plant, adjacent to the old or Hickory Plant, and installed a blower system in it. George Garrison of Little Rock, engaged in the sheet metal and blow pipe business, installed the blower system for appellants. He testified it was as modern as could be made and as good as any he had seen. J. S. Henderson, safety engineer of the State Labor Department, testified he had inspected about all the handle plants in the state, some of which do not have blower systems, and that this plant's system is as good as any he had seen and takes care of the dust as well as any of them. Appellee, Carl Bruner, testified that the blower in the Hickory Plant disposes of

90 per cent. to 95 per cent. of the dust and in the Ash Plant 99 per cent., and that they did not know of any better system and if they did they would have it. Numerous employees of appellants testified to the same general effect as did a number of operators of other handle plants both in and out of this state.

In view of this state of the record, how can it be said a question was made for the jury? The master is not an insurer of the safety of his servant, and the utmost of his duty is the exercise of reasonable care. In *Seaman Store Co.* v. *Bonner,* 195 Ark. 563, 113 S. W. 2d 1106, we quoted with approval from *Titus* v. *Ry. Co.,* 136 Pa. St. 618, 20 Atl. 517, 20 Am. St. Rep. 944, the following which seems appropriate here: "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and, however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way, for which liability shall be imposed."

The law does not impose the burden on the master of making the servant's place to work safe or reasonably safe. If the place is not reasonably safe, still there is no liability on the part of the master if he has used reasonable care to make it reasonably safe. *Meridian Grain & Elevator Co.* v. *Jones,* 176 Miss. 764, 169 So. 771.

Since the undisputed proof shows that appellants had exercised reasonable care to make appellee's place reasonably safe, they were not guilty of negligence as alleged, and the court should have directed a verdict in their favor. The judgment is, therefore, reversed and, as the cause appears to have been fully developed, it is dismissed.

McFADDIN, J., not participating.