PARAMOUNT-RICHARDS THEATRES *v*. PRICE.

In Banc.    June 11, 1951.

No. 37980   (53 So. (2d) 21)

Brandon, Brandon, Hornsby & Handy, for appellant.

Laub, Adams, Forman & Truly, for appellee.

**McGehee, C. J.**

On the night of April 8, 1948, the plaintiff, Mrs. T. J. Price, sustained a severe injury in a fall while descending some steps in the well lighted marquee of the theatre of Paramount-Richards Theatres, Incorporated, immediately after leaving the dark auditorium and about 10 o'clock in the evening where she had seen a picture show. She filed this suit on December 19, 1949, and thereafter recovered damages in the sum of $5,000 for such personal injury.

The plaintiff was then 68 years of age, had frequently attended the picture shows at this theatre and had theretofore been assisted by her son-in-law in descending the steps; he was not with her on this particular evening. The steps were 7 in number, including the top landing, and the length of each step running north and south, was approximately 18 feet and 2½ inches. The width of each step, that is that part which a person steps on, was approximately 18½ inches, and the height or depth from one step to another, sometimes referred to as the riser, was 6 inches. The complaint is, according to the declaration, that these steps were too narrow, and that the theatre had placed on the third step from the top a mirrored post, approximately 8 inches square, located somewhat nearer to the north end of the steps than to the south end thereof. This post extended all the way to the ceiling. The patrons of the show would depart through a double door either to their right or left of the post when coming out of the theatre. It is neither alleged nor shown that this post constituted an obstruction to the convenient egress of the patrons from the show as they went down these steps towards the street. The complaint is that the mirrored post was calculated to distract the attention of one descending the steps and to cause them to look into the mirror instead of at the steps where they were walking; that the placing of the mirrored post on the steps was wholly unnecessary, served no purpose other than to adorn or decorate that part of the building outside of the auditorium and that the placing of this mirrored post on the steps amounted to a failure on the part of the defendant theatre to exercise reasonable care to maintain its premises in a reasonably safe condition for the ingress and egress of its patrons.

The most important fact in the case is that the steps were not only reasonably safe but were altogether safe, and it is not alleged that they were in any manner defective or insubstantial, except that it is alleged in the declaration that they were too narrow, and this allegation

was conclusively shown to be untrue by the undisputed evidence in the case. Specifically it should be observed that the plaintiff does not make the contention that the mirrored post and the artificial lighting in any manner caused a reflection from the mirror into the steps that would give them a distorted appearance. Her complaint is that as she looked in the mirror on her right side at her feet while descending the steps, that the steps as they appeared to extend through the mirror "looked wider" therein, and that she, therefore, became confused and fell. ▪▪ ▪ This being true, the proximate cause of her injury was her failure to look where she was walking. We are unable to see how any different situation would have been presented if there had been a mirror in the wall at the end of the steps instead of on the post.

It is suggested that the owner of the theatre should have anticipated that its patrons in descending the steps would look into a mirror off to one side of where they were walking. But, it is likewise true that it should have been anticipated that the patrons would look at the advertisements of coming attractions that were displayed on the wall at the end of the steps, and which advertisements are disclosed in the photographs contained in the record before us, but these considerations do not impose liability upon the defendant for an injury that was not reasonably foreseeable as a probable consequence of the manner in which the premises were being kept and maintained.

Under the decision in the case of Mauney v. Gulf Refining Co., 193 Miss. 421, 8 So. (2d) 249, 9 So. (2d) 780, the Court is not justified in standing on the vantage ground of what did happen on the occasion complained of and look back in the direction from effect to cause, but we must go back and view the situation from the standpoint of foreseeability before the accident occurred and determine whether or not there was a failure to exercise reasonable care to maintain the premises in a reasonably safe condition to avoid the real probability

of an accident. ██ █ The owner of the premises is not required to anticipate an unusual and improbable result, such as the injury sustained by the plaintiff in this case. The owner is merely required to anticipate a result that is more apt to happen than not to happen, that is to say he must anticipate only such a result as is reasonably foreseeable as a probable consequence of his act. Gulf Refining Co. v. Williams, 183 Miss. 723, 185 So. 234; Louisiana Oil Corp. v. Davis, 172 Miss. 126, 158 So. 792. Doubtless it had never occurred to any one of the hundreds of patrons who had been using these steps prior to the accident, and while this post was being maintained in the location where it was when this accident occurred, that any accident would probably occur as reasonably foreseeable by reason of the maintenance of this mirrored post on the steps. The plaintiff herself had frequented the picture show on many previous occasions, and according to her testimony had never observed the presence of this post until the occasion of this accident.

The testimony of the plaintiff, upon whom the burden of proof rested in the case, is for the most part not clear and understandable as to just what caused her to stumble and fall, but she was asked the following questions and gave the following answers thereto which are clearly understandable. She was asked:

"Q. Did you see your feet, or in the mirror? A. I seen them in the mirror.

"Q. Did you ever look down in front of you as you came down? A. No, sir, looked at my feet.

"Q. In the mirror? A. Yes. Then, the steps looked larger.

"Q. Why, in coming down the steps, didn't you look in front of you and look at the steps? A. I dont't know why I didn't, but I didn't."

The appellee cites the case of Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447, 448, and particularly the portion thereof which reads as follows: "It is not to be denied that there is some inharmony among the numer-

ous cases dealing with the subject, but all are in substantial accord upon the rule that the owner or person in control of a building, such as is here under consideration, must exercise reasonable care to so construct and maintain the floors therein as that they shall be reasonably safe for those who have the right to use them, when and while the users are themselves exercising reasonable care in that use." Without regard to whether or not the foregoing rule was applicable against an invitee, we are of the opinion that there is no liability in the instant case and that the defendant was entitled to the peremptory instruction requested, under the principles announced in the cases of D'Antoni v. Albritton, 156 Miss. 758, 126 So. 836; Williams v. Lumpkin, 169 Miss. 146, 152 So. 842; Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277; Meridian Grain & Elevator Co. v. Jones, 176 Miss. 764, 169 So. 771; Ming v. City of Jackson, 202 Miss. 260, 31 So. (2d) 900, and the cases hereinbefore cited. And we quote further from the Mauney case, supra, the following: "The rule is firmly established in this state, as in nearly all the common law states, that ██ ██ in order that a person who does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom." [193 Miss. 421, 9 So. (2d) 780.]

Our sympathies are, of course, on the side of this elderly lady who sustained such a severe injury, but our paramount duty is to undertake to apply the true test of liability, and to hold a defendant to only that degree of care to keep its premises in a reasonably safe condition so as to guard against accidents that are reasonably foreseeable as a reasonable probability of the act complained of, in keeping with the principles heretofore announced in the decided cases.

The judgment of the trial court must, therefore, be reversed and a judgment rendered here in favor of the appellant.

Reversed and judgment here for the appellant.

**Lee, J.** (dissenting)

I think that the case of Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447, cited in the majority opinion, lays down the correct rule as to the degree of care which the owner of a building must exercise for the safety of his patrons. In that case, the woman slipped and fell on linoleum. But the proof showed that such linoleum was in common use in stores, office buildings and other public buildings everywhere, and that it was installed, cleaned and polished in the usual and customary manner.

In the case here, the mirrored post was erected on the steps. The purpose was not one of necessity, but merely for ornamentation. There is no proof in this record that the erection of such a post on the steps of entrance into and exit from picture shows is usual or customary. It cannot be said from this record that there is any other picture show in the country which has a mirrored post almost in the middle of the steps which patrons must use in going into and out of the show.

Mauney v. Gulf Refining Co., 193 Miss. 421, 8 So. (2d) 249, 9 So. (2d) 780; Gulf Refining Co. v. Williams, 183 Miss. 723, 185 So. 234; Louisiana Oil Corp. v. Davis, 172 Miss. 126, 158 So. 792, and other cases cited in the majority opinion, do not require the owner to anticipate unusual or improbable results. Those cases do announce the rule, however, that the owner must anticipate such results as are reasonably foreseeable as probable consequences of his act. We are in complete agreement as to the correctness of these principles. The parting of the ways comes in the application of those principles to the particular facts of this case.

Appellee's statement was that she left the show, and went around the post, which was at an angle to her. The place was then bright, but before she took two steps, it became dimmer. While she gave the answers appearing in the majority opinion, at another place in her testimony, she said: ''A. I came on out, and I was coming on out

and taken one step, and looked down and seen my feet, and seen my body, then the step looked twice as large as it was, and I made another step and there is when I fell.'' She made a like explanation at least four other times, one of which was: ''When I looked over to the post, I seen my feet and the steps, and the reflection of the steps in the mirror . . . and I was still looking down when I made the next step, and that is when I fell.'' On the cause of her injury, this is her proof:

''Q. What caused you to fall? A. Was that mirrored post and the artificial light''.

And again on cross-examination:

''Q. The first time you ever noticed those mirrors was that night? A. Yes, sir.

''Q. If you hadn't noticed them, you wouldn't have been confused? A. I wouldn't have got hurt.''

To me, it seems clear that the jury was warranted in finding these facts: As appellee came out of the show, there was considerable brightness for an instant until her eyes could react. As she started descending the steps, her attention was attracted by and to the mirror. She could see herself and the steps therein. She became confused from the reflection. She was still in motion. When she took the second step down, she fell on account of the confusion which she experienced by reason of the mirror.

The mirrored post was erected near the middle of the stairs, on the third step from the top, which stair, the appellant knew, would be used daily by large numbers of people.

Now, the descent of steps is an ordinary experience of life. It is necessary, however, in such operation, that a person so descending shall keep his attention on what he is doing. Otherwise, it can be hazardous.

It is a matter of common knowledge that the average person, on passing a mirror, will look in it. It is also a matter of common knowledge that the reflection of steps in such mirror, where such person is descending, produces great confusion to him. Consequently, when the appel-

lant erected this mirrored post on the steps, it knew, or ought to have known, that its patrons would look in the mirror, and would be greatly confused as they descended. Hence, it created a serious hazard for those whom it had invited into its building.

It is my view that the appellant, when it erected the mirrored post on the steps, ought reasonably to have foreseen that its patrons would likely have their attention attracted thereto, and distracted from the task of descending the steps, and that, on this account, falls and injuries would proximately result. To me, it was the equivalent of setting a trap for its patrons. I consider it almost a miracle that others had not been previously injured.

I do not agree with the reasoning of the majority that a similar situation would exist if the mirror had been placed on one of the side walls. In that event, the patron, in order to look in it, would necessarily be required to turn in that direction. It could hardly be assumed that a person, in his right mind, would look in a mirror, and at the same time, move sidewise at a right angle down a flight of steps. I do not see how such an analogy can circumvent liability on account of confusion from a mirrored post, situated almost immediately in front of the patron as he comes out of the show, there on the steps, which he must descend.

Sincerely believing that the evidence was sufficient to present an issue of negligence for determination by the jury, and that the jury's verdict should be upheld, I most respectfully dissent from the conclusion reached by the majority of the Court.

**Roberds, J.,** joins in this dissent.