ROBERTSON, Justice:
Appellee, Otis Brown, sued Appellant, Larco Drilling and Exploration Corporation, in the Circuit Court of Pike County for damages sustained by him when he jumped from the bulldozer that he was operating and broke his leg. The blade of the bulldozer hit an angle joint of a gas supply line owned by Larco and ruptured it. The escaping gas made a loud noise and frightened Brown. He testified that he was either blown off or jumped off the bulldozer. The jury awarded Brown $14,000.00 damages and Larco appeals.
*309 In 1963 Larco attempted secondary recovery operations in the Summit Oil Field of Pike County. Larco ran a gas supply line north from Sun Oil Company’s pipeline near the McComb Oil Field to the Summit Oil Field about 2 miles distant. Although the line was a low pressure line with an average pressure of about 200 pounds per square inch, the line was 2}4 inch steel tubing with a capacity of 6,000 pounds per square inch pressure. The line was laid mainly on top of the ground in isolated areas, but was buried, and marked above ground, where it crossed public roads. From Larco’s recovery well, the gas supply line ran south then turned and ran west for about 100 yards, thence the pipeline turned again and ran south to the McComb Field.
In February, 1969, some unknown person attempted to burn out some fire ant beds about 1/2 mile north of the east-west section of the gas line. The fire got out of control and burned rapidly to the south. Forestry personnel began their fire-fighting operations, including the cutting of a fire lane immediately south of the fire.
John Clifton, a contract gauger retained by Larco, saw the fire from some distance away and went directly to the location of the fire. He warned Forestry Service personnel of the location of the gas line. Clifton went to the supply point at the south end of the gas line and cut off the gas at the supply valve. He then went back to the north end of the line and started the compressor to bleed off as much gas as possible from the line. Clifton testified that he had no knowledge and no notice whatsoever that any persons other than the Forestry Service fire-fighting personnel were attempting to fight the fire or cut fire lanes.
Some time after the fire broke out, Ap-pellee, Otis Brown, foreman of the road crew of a Supervisor of Pike County, saw the fire, loaded a county bulldozer on a low-boy trailer and proceeded to a point south of the fire. He unloaded the bulldozer and, with a fellow county road worker serving as a swamper and walking in front of the bulldozer, started to cut a fire lane south of the east-west section of the gas supply line. His attention was called to the gas line by the swamper and he moved a few feet further south of the line. The gas supply line, at a point close to where he began his fire lane, turned from south to west. The line ran west for about 100 yards along the south side of an old fence, then turned to the left and ran directly south. Although Brown could not see the gas line or the ground in front of his bulldozer because of high sage grass and briar bushes, and although his swam-per had moved from in front of the bulldozer to back of the bulldozer because of the high grass and briars, Brown kept the blade of his bulldozer on the ground and proceeded to cut a fire lane in a westerly direction. The blade of the bulldozer hit the angle joint of the gas supply line where it turned from west to south and ruptured it. The escaping gas made a loud noise which Brown testified sounded like an explosion. He put the bulldozer out of gear and apparently jumped from the bulldozer, breaking his right leg between the knee and the ankle. The fire was brought under control and put out by the Forestry Service fire-fighting personnel some distance north of the east-west section of the gas pipeline. The fire did burn over about 300 yards of the north-south section of the pipeline without incident — no explosion, no burning, no damage.
In its Assignment of Errors, Larco asserts :
“The injury and damages sustained by the Appellee were, as a matter of law and as a matter of fact, too remote and could not have been reasonably anticipated by the Appellant, and therefore were not within any duty owed by Appellant to Appellee; . . . .”
*310 Appellant admitted in its brief that Brown would be a licensee because, under the common law, even a private person who enters the property of another for the purpose of fighting a fire is not a trespasser but is a licensee. The question immediately arises as to what duty is owed a mere licensee.
In Langford v. Mercurio, 254 Miss. 788, 183 So.2d 150 (1966), after finding that Mrs. Mercurio, the appellee, was at most a gratuitous licensee, this Court said:
“This being true, it cannot be said that they breached any duty which they owed her, that duty being no higher than not to injure her willfully or wantonly. Raney v. Jennings, 248 Miss. 140, 158 So.2d 715 (1963); Selby v. McWilliams Realty Corp., 246 Miss. 568, 151 So.2d 596 (1963); . . . .” (254 Miss, at 800, 183 So.2d at 154).
In Mauney v. Gulf Refining Company, 193 Miss. 421, 9 So.2d 780 (1942), this Court said:
“The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, D’Antoni v. Albritton, 156 Miss. 758, 766, 126 So. 836; Williams v. Lumpkin, 169 Miss. 146, 152, 152 So. 842; but that the actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities. Illinois Cent. R. Co. v. Bloodworth, 166 Miss. 602, 617, 145 So. 333; [and other cited cases].

“In such a situation, as indeed in most situations, the principles of the common law must be kept within practicable bounds and so as not to occupy an attitude which would place it over and above the heads of those who must carry on the every day affairs of life. Hence, the law must say, as it does, that ‘care or foresight as to the probable effect of an act is not to be weighed on jewelers’ scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations’, Illinois Cent. R. Co. v. Bloodworth, supra, 166 Miss, page 618, 145 So. page 336; and that it would impose too heavy a responsibility for negligence to hold the tort feasor accountable for what was unusual and unlikely to happen, or for what was only remotely and slightly probable. 38 Am.Jur. p. 713, § 61. As said by this Court in Meridian Grain, etc., Co. v. Jones, 176 Miss. 764, 776, 169 So. 771, 772, quoting Pollock on Torts, 9th Ed., p. 41: ‘A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible.’ ” (193 Miss. at 427-428, 429-430, 9 So.2d at 780-781).
We feel that in this case the injuries and damages were even more remote and unforeseeable than they were in Mauney.
We feel that the accident, injuries and damages were too remote and that the appellant could not have reasonably anticipated or foreseen such an unusual, improbable, extraordinary and freakish accident with its consequent injury and damages. The only duty that Larco owed Brown, a mere licensee, was not to willfully or wantonly injure him. Larco did not breach that duty. The trial court should *311 have directed a verdict for Larco. The judgment is, therefore, reversed and judgment rendered here for the appellant.
Reversed and rendered.
ROGERS, P. J., and PATTERSON, IN-ZER and SMITH, JJ., concur.