STURDIVANT, et al. *v.* CROSBY LBR. & MFG. CO.

June 8, 1953

No. 38813          34 Adv. S. 169          65 So. 2d 291

*C. L. Collins* and *L. C. Gwin,* Natchez, for appellants.

94

*Maxwell Bramlette,* Woodville, for appellee.

ETHRIDGE, J.

The issue is whether on demurrer the declaration can be said to charge that the events combining to cause decedent's death were reasonably foreseeable by the defendant-actor.

This action was brought in the Circuit Court of Wilkinson County by the widow and six children of William Griffin Sturdivant, deceased. The summary of facts hereinafter made represents those averred in the amended declaration to which a demurrer was sustained. Sturdivant at the time of his death was fifty-eight years of age and was employed by the Crosby Lumber and Manufacturing Company, which operated a large lumber mill at the Town of Crosby in Wilkinson County, Mis-

sissippi. The lumber mill of appellee, defendant below, Crosby Lumber and Manufacturing Company, together with numerous buildings appurtenant to it, were located within an area, apparently fenced, called the mill-site enclosure. Within that enclosure in the extreme northeast corner was appellee's electrical power generating plant, which furnished power for the lumber mill and also for the Town of Crosby. From the power generating plant overhead wires strung upon poles thirty feet above the ground level serviced the various buildings within the mill-site enclosure.

On June 22, 1948, the deceased W. G. Sturdivant, whose widow and children were plaintiffs below, appellants here, was working for appellee. The mill temporarily suspended its activities during the noon hour on that day, and the declaration charged that some of appellee's employees followed their custom and went to the shade of a large tree to eat lunch. This tree was located on the south bank of a small creek which ran through the mill-site enclosure. Immediately north of the creek was appellee's pump house, and north of that was its planer mill. The creek was south of these two buildings and the tree was south of the creek, about thirty feet from the pump house building. It was the custom for some of defendant's employees to rest during the lunch hour under the tree. Overhead electrical wiring lead from the power plant in a southwesterly direction to a point close by the planer mill, and the overhead wiring then proceeded south and parallel with the eastern side of the planer mill to a point close alongside and east of the northeast corner of the pump house. At that point the electrical power line, instead of going south toward the creek, turned at right angles to lead into the pump house and into the planer mill. The tree along the stream bank, under which Sturdivant was sitting during the noon hour in question, was located immediately south of the right angle turn of the power line into the pump house and planer mill, and directly

in line with the north-south course of the power line prior to its right angle turn into the pump house and planer mill.

The declaration charged that defendant's overhead wire distribution system was negligently equipped with old, rotten and ragged insulation covering in such a way that the wires were in many spots bare, and in other spots inadequately covered and insulated; that these overhead wires were kept by defendant charged with a high voltage of electric current, and that because of this charge of electricity and because of inadequate insulation, these wires constituted an attraction to atmospheric electricity and constituted a dangerous inducement to lightning to strike upon the said overhead wire distribution system, all of which defendant knew or should have known. It was further charged that on the day in question these overhead wires were equipped with no form of lightning arrester or overhead safety device which would decrease the risk of injury from the overloading of the wires, such as might reasonably be anticipated during electrical storms; that on several previous occasions lightning had struck the overhead wiring system of defendant and that the resulting overload had caused damage to the switches, motors and machinery of defendant, about which defendant's employees were called upon to work; that this resulted in a risk of injury to defendant's employees and others on the premises which defendant knew or should have known, and that defendant could have materially reduced this risk by the installation of lightning arresters and grounds.

On June 22, 1948, between 12 and 1 P. M., while Sturdivant was resting under the tree on the stream bank, a bolt of lightning struck the overhead wires leading from defendant's power generating plant to the planer mill and pump house of defendant. The declaration then charged as follows: "* * * and the said bolt of lightning and the tremendously excessive overload of electrical current resulting therefrom traveled down and

along the said overhead power line leading southwardly as hereinabove shown along the easterly side of the planer mill or pump house and, because of the said tremendously excessive overload of current and because of the negligent failure of the defendant to provide the said wires making up the said overhead distribution system with sound, unbroken and adequately maintained insulating materials along the full length of said wires or to provide the said wires and electric distribution system with lightning arresters or other precautionary installations, the excess of electrical current, above the normal load capacity of the said wires, arced, from the point at which the said power line made its right angle turn into the planer mill and pump house, to the said tree under which the plaintiff's decedent was resting; that said electrical charge traveled down the said tree and a vine suspended therefrom into the body of the plaintiff's decedent causing his death." Hence it was charged that Sturdivant's death was proximately caused by the negligent failure of defendant to use reasonable care to furnish Sturdivant a reasonably safe place in which to work, and by defendant's negligent failure to use reasonable care to keep its premises reasonably safe for persons rightfully in and about the property. Damages for Sturdivant's alleged wrongful death were sought.

To this amended declaration appellee demurred, asserting that the injury complained of was an extraordinary and improbable one, which could not have been reasonably expected, contemplated, foreseen or anticipated by appellee; that the negligence charged to defendant was not the proximate cause of his injury; and that at the time of his injury the deceased was not employed by defendant but was then engaged in eating his lunch. The circuit court sustained this demurrer, and we think properly so.

■■■ For purposes of deciding this case on demurrer, we must assume the averments in the declaration are true.

That being so, the declaration adequately charged that appellee was negligent in failing to keep its overhead wires in good condition with reasonable insulation on them and in failing to have lightning arresters and grounds on the wiring system. The pertinent rule is stated in 18 Am. Jur., Electricity, Section 91, pp. 483-484: ██ ██ "According to the great weight of authority, if by the exercise of such reasonable precautions as a man of ordinary care and prudence would exercise in respect of such a dangerous agency, injuries to persons and property from the conduction along the wires of currents of atmospheric electricity may be avoided, or at least minimized, it is the duty of companies engaged in this business to employ devices and appliances to that end and a failure to do so will render them liable for injuries resulting therefrom. Thus, the company is liable for fires resulting from lightning carried over the wires and into buildings as a consequence of its failure to supply the necessary safeguards; * * *." Moreover, ██ we think that whether Sturdivant was at the specific time of his death an employee or an invitee, appellee owed him a duty to use reasonable care to protect him from injury.

However, this is a suit asserting that appellee was negligent toward the deceased. ██ ██ Negligence toward a particular person is conduct which falls below the standard established by the law for the protection of others against unreasonable risk of harm. The idea of risk necessarily involves a recognizable danger based upon some reasonable belief that harm may follow. A risk is a danger which is apparent or should be apparent to one in the position of the actor. ██ ██ The conduct of appellee to constitute culpable negligence toward Sturdivant must be unreasonable. No man can be expected to guard against events which are not reasonably to be anticipated, or are so unlikely that the risk would commonly be disregarded. Prosser, Torts (1941), Sec. 35. Even with the fact of causation established, the Court is confronted with the problem as to the limitation upon de-

fendant's legal responsibility for the harm which he has caused. Culpable negligence necessarily involves a foreseeable risk, a threatened danger of injury, and conduct in proportion to the danger. If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence, and no liability.

██ With these principles in mind, we do not think that the injury and death of Sturdivant which resulted from this improbable chain of events could have been reasonably anticipated by appellee. The intervention of lightning striking these wires and its unlikely failure to follow the wiring, but instead arcing over the creek for thirty feet into a tree and down the tree and a vine on it into Sturdivant's body was, we think, an unforeseeable result of an unforeseeable force. ██ In order that a person doing an act which results in injury to another shall be liable for it, the act must have been of such character and done in such a situation that by the usual course of events some injury, not necessarily the particular injury, would result. Cumberland Tel. & Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890 (1910). The attendant circumstances must be such that an ordinarily prudent man ought reasonably to have anticipated that some injury would probably result from the act done. The probability must be a reasonable one, reasonably to have been anticipated by a reasonably prudent person. ██ But the actor is not bound to a prevision or anticipation which would include an unusual, improbable or extraordinary occurrence, although such happening is within the range of possibilities. Mauney v. Gulf Refining Co., 193 Miss. 421, 8 So. 2d 249 (1942); Gulf Refining Co. v. Williams, 183 Miss. 727, 185 So. 234 (1938).

The likelihood of the result happening must be more than a remote possibility to fulfill the requirements of this rule of liability. The likelihood ''which furnishes the essential ligament between the negligence and the in-

jury must be one of weight and moment.'' Mauney v. Gulf Refining Co., supra. The area of foreseeable liability does not include remote possibilities. The legal standard of the reasonable man can be guided only by a reasonable estimate of probabilities. The most recent case in which this Court has considered the requirement of foreseeability in the common-law standard of care is Paramount-Richards Theatres v. Price, 211 Miss. 879, 53 So. 2d 21 (1951). A woman patron of a moving picture theatre, in leaving the darkened auditorium, walked into the well-lighted marquee, and while descending the stairs looked into a mirrored post located at the third step from the top. This, to her, made the steps look wider and she thereupon became confused and fell. She sued the theatre for the resulting injuries. It was held that the proximate cause of her injury was her failure to look where she was walking. It was argued that the theatre should have anticipated that the mirrors on the post would have confused patrons, but the Court held that the owner of the premises was not required ''to anticipate an unusual and improbable result * * * the owner is merely required to anticipate * * * only such a result as is reasonably foreseeable as a probable consequence of his act''; and that such an accident could not have been reasonably foreseeable by the theatre owners.

■■■ To impose upon appellee liability for Sturdivant's death would be placing upon appellee the burden of prevision or anticipation of an unusual, improbable or extraordinary occurrence. It was within the range of possibilities that lightning would strike the power line, that it would not follow the line into the pump house and planer mill, but that it would continue straight ahead, leave the line, arc thirty feet over the creek into a tree, that Sturdivant would be under the tree, and that the lightning would then go through the tree and down a vine into Sturdivant's body. But although that was a possibility, those events were most assuredly no more

than that. Although lightning had previously struck the wires and damaged machinery of appellee, it had not previously taken the unusual course of then departing from the power line wires and arcing more than thirty feet away in any direction, such as over the creek. Appellee had no control over the movements or whereabouts of Sturdivant during his lunch hour. Moreover, to expect appellee to foresee that not only a bolt of lightning would strike its wire, but that the lightning would suddenly desert appellee's wires, which were attractive to the bolt in the first place, and to arc a distance of thirty feet to the tree situated on the other side of the creek and under which Sturdivant was lying, would be at best only a remote possibility. The likelihood of such an event must be one of weight and moment, and the likelihood of these unforeseeable results of unforeseeable forces occurring was indeed remote. We cannot look from effect to cause. The standard is an external one, from the point of view of the actor prior to the occurrence. The present facts are entirely different from several cases to which appellants refer, where for example, the employee is at work on machinery serviced by electrical wires, or where the electric wires lead into a home. Johnson v. Cosmos Portland Cement Co., 64 Fed. 2d 193 (C. C. A. 6th 1933), is not applicable, because the present facts are considerably more attenuated, where a bolt of lightning has arced under unforeseeable circumstances, in an unforeseeable direction, at an unforeseeable time. The unfortunate occurrence which resulted in Sturdivant's death is therefore outside the area of actionable, culpable negligence.

Since after the demurrer was sustained appellants did not decline to plead further, and no final decree was taken for appellee, we shall affirm and remand this case.

Affirmed and remanded.

*McGehee, C. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.