SCOGGINS *v.* VICKSBURG HOSPITAL, INC.

No. 40291 January 14, 1957 91 So. 2d 837

*J. Wesley Miller,* Rolling Fork, *Prewitt & Bullard,* Vickburg, for appellant.

*Dent, Ward & Martin,* Vicksburg, for appellee.

KYLE, J.

The appellant, E. T. Scoggins, plaintiff in the court below, sued the appellee, Vicksburg Hospital, Incorporated, as defendant, in the Circuit Court of Warren County, for damages for personal injuries alleged to have been sustained by the appellant as a result of a newsboy entering the appellant's hospital room on January 27, 1954, while the appellant, who was a patient in the appellee's hospital, was asleep, and striking the appellant on the leg with a newspaper, thereby startling the appellant and causing him to jump or fall out of bed.

The plaintiff alleged in his declaration that he was admitted into the Vicksburg Hospital, which at that time was known as the "Lutheran Hospital", on January 20, 1954, for a cataract operation on his left eye;

that the operation was performed on January 21, 1954, by Dr. Edley H. Jones; and that the plaintiff remained in the hospital for a period of approximately three weeks under the care and treatment of Dr. Jones; that the defendant corporation, knowing the condition of the plaintiff and the nature of the operation performed on his left eye, was under a duty to exercise more than ordinary care and to devote more than ordinary attention to him, considering the fact that he was highly nervous and had both eyes bandaged; but that the defendant corporation negligently failed in its duty to the plaintiff by allowing a newsboy to enter his room on January 27, 1954, while the plaintiff was lying on the bed asleep, and throw a newspaper at him, striking him on the leg, and startling him, and causing him to jump or fall out of bed, as a result of which a stitch was broken in his left eye causing an intraocular hemorrhage and a permanent impairment of his eyesight.

The defendant corporation in its answer admitted that the plaintiff was a patient in the hospital during the time mentioned in the plaintiff's declaration, and that an operation was performed by Dr. Jones on January 21, 1954, for the removal of a cataract from the plaintiff's left eye; but the defendant denied each and every allegation of negligence contained in the declaration.

The case was tried before a jury at the October 1955 term of the court, and the jury returned a verdict in favor of the defendant. A judgment was then entered in favor of the defendant. The plaintiff filed a motion for a new trial, which was overruled; and from the judgment rendered against him the plaintiff has prosecuted this appeal.

Three errors are assigned and argued as grounds for reversal of the judgment of the lower court. The first and second assignments relate to instructions granted and refused by the trial judge. The third assignment relates to the refusal of the trial judge to grant a per-

emptory instruction as to the defendant's legal liability requested by the plaintiff. It is therefore necessary that we give a brief summary of the testimony.

The plaintiff, E. T. Scoggins, testified that he entered the hospital on January 20, 1954, and that the operation on his left eye was performed by Dr. Jones on January 21. The plaintiff was taken from the operating room to a room on the fourth floor of the hospital, and was told to lie flat on his back for twenty-four hours. The stitches were removed on January 23 or 24, and after that he was able to sit up a little on the side of the bed. His wife stayed in the hospital room with him day and night, except during short intervals, when she would go to town. When the stitches were removed, he could see light. On the fourth day he was told that he could walk to the bathroom; but his eyes were still bandaged. On Wednesday morning, January 27, Dr Jones came and changed the bandages on his eye, and told his wife that he could go home. Mrs. Scoggins then left the hospital and drove to her home in Issaquena County to prepare the house for the plaintiff's return. While she was away from the hospital and the plaintiff was lying on his bed practically asleep, sometime after the noon hour, a newsboy came to the door of the hospital room, and struck the plaintiff on the leg with a newspaper, and hollered "Var". The plaintiff was startled from his sleep by the newsboy's intrusion, and jumped out of his bed and called for the nurse. Mrs. Walter Little, the nurse on duty at that time, ran to his room immediately, and as she entered the room exclaimed, "O, my God! why, Mr. Scoggins, what happened?" The plaintiff stated that he told Mrs. Little what had happened, and she then led him back to his bed. Dr. Jones came the next morning to dress the eye, and when the bandages were removed, the plaintiff found out that he could not see anything—could not distinguish light from darkness. Thereafter the doctor gave him typhoid shots for chills

and fever, and he remained in the hospital until some-time in February. His eye was still bandaged when he left the hospital and returned to his home. The plaintiff stated that he came back to the hospital about a year later and had another operation performed on the left eye, and as a result of that operation got back a little eyesight. On cross-examination the plaintiff admitted that his wife had been in the habit of reading the newspapers to him while he was in the hospital, and that he had had other visitors.

Dr. Edley H. Jónes testified that he had performed cataract operations on both of Mr. Scoggins' eyes. The operation on the right eye was performed sometime during the year 1953. The operation was not a success, and two other operations were performed on that eye. The operation on the left eye was performed on January 21, 1954. The patient's condition appeared to be satis-factory for a period of several days, and when the doctor dressed his eye during the morning of January 27 he could see fairly well. The doctor came back to see him in the afternoon, and asked him how he was feeling. He said he was feeling fine. Mrs. Scoggins, who had re-turned from her visit to the country, then said to her husband, "Yes, but tell him what happened." The doctor stated that Mr. Scoggins then told him that he was lying on the bed dozing, and a newsboy came in and touched or hit him on the barefoot and said "paper", and he was so startled that he jumped clean out of bed. The doctor stated that he did not remove the bandage and look at the patient's eye at that time; but he came back the next morning and removed the bandage and examined the eye. The eye did not look the least bit disturbed; but while he was dressing the eye, Mr. Scoggins put his hand over the eye, and then said, "Hell, doctor, I can't see." The doctor stated that he was greatly disturbed when Mr. Scoggins said he could not see, and he came back to the hospital that night and removed the bandage, and ex-

amined the eye with an ophthalmoscope. The doctor stated the result of that examination as follows: "When I looked into his eye that night, I didn't get any reflection of light, although I didn't see any blood; but the only thing I could conclude that had happened was, that he had had a hemorrhage in the back part of the eyeball."

The doctor stated that the clot that he was talking about could have occurred as a result of the patient jumping out of bed. He was pressed by the appellant's attorney for an answer to the question, whether it was probable that the incident referred to above "caused this blood clot in his eye." His answer was, "You are putting me on the spot there, * * * such a thing could have caused it." The court interrupted the examination, and said, "What could be possible is not sufficient in law." The doctor was then asked whether it was "probable". His answer was, "Yes it is probable." The doctor stated that, after making the ophthalmoscopic examination, he concluded that the patient had an intraocular hemorrhage; and after discussing the case with Dr. Allen, professor of ophthalmology at Tulane University, he decided to administer typhoid shots intravenously over a period of several days. The patient was given ten injections. The eye looked good at times after after that, but the patient was not able to see out of the eye. The doctor stated that no one could know what happened inside the eye. He said, "I presumed it had some blood there and he couldn't see, and in the course of time and as a result of that treatment, it should improve." But the vision did not return to the eye until the patient was operated on again in March 1955.

On cross-examination, the doctor stated that chronic simple glaucoma was the greatest cause of blindness, and that condition could arise without trauma; that trauma is not the most common cause of glaucoma, the cause of glaucoma is not known; that gagging and nausea and vomiting could cause a hemorrhage in the eyeball;

that he had known of cases where people lying in bed had developed a hemorrhage in the eye. The doctor repeated his statement that he presumed that the patient had suffered an intraocular hemorrhage; but he could actually see no blood. He then said: "If it had been a tiny bit of blood there, it would have been a slight reflex there, and I could have seen something. There was actually nothing. I never saw a drop of blood, its the only thing I could explain it with, and that was my diagnosis."

Mrs. E. T. Scoggins testified that she was not present when the newsboy entered her husband's hospital room; but she returned to the hospital about the middle of the afternoon, and her husband told her what had happened. He was very much upset. Mrs. Scoggins stated that she had seen the newsboy several times while her husband was in the hospital, and had bought papers from him.

The defendant's evidence consisted mainly of the testimony of Mrs. Walter Little, the hospital nurse, who was on duty on the fourth floor of the hospital at the time the newsboy was alleged to have entered Mr. Scoggins' room, and the testimony of Dr. Donald S. Hall and Dr. Sterling S. McNair.

Mrs. Little testified that she was a graduate registered nurse and was employed at the Vicksburg Hospital during the month of January 1954 as supervisor of the fourth floor, and was on duty on January 27 until 3:00 o'clock p. m. She remembered that Mr. Scoggins was in Room No. 406. She was questioned about the alleged incident concerning the newsboy's entering Mr. Scoggins' room and startling the patient, and causing him to jump out of bed and to scream for a nurse, as testified by Mr. Scoggins. She stated that nothing of that kind happened during the day; and she denied that she came into Mr. Scoggins' room and said to him, "My God, Mr. Scoggins, what has happened?" Dr. Hall testified that there were various causes that

might result in a hemorrhage to a person's eye. He stated that disease of the blood vessels themselves, high blood pressure, disease of the blood itself, certain metabolic diseases, such as diabetes and infections, might cause such hemorrhage. Trauma definitely could cause a hemorrhage. Dr. McNair testified that a person could have a hemorrhage inside of the eyeball without any cause whatsoever. This was especially true in a person who had high blood pressure, or hardening of the arteries, or diabetes. An injury or a trauma around the eye might cause a hemorrhage.

 ██ The first point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is that the court erred in granting the following instruction to the defendant:

"The court instructs the jury for the defendant that it is not an insurer of the safety of its patients and that it is under an obligation to furnish to Mr. Scoggins only such care and attention that he needed on January 27, 1954. Defendant was not required to keep a constant watch over Mr. Scoggins, nor was it required to keep out visitors from his room. The court charges you that the permitting of sale of papers in the hospital by newsboys to the patients and families of the patients was not negligence in itself, and that to constitute negligence you must find from the evidence that the defendant could have or should have foreseen that the newsboy would probably have entered the hospital room of Mr. Scoggins while he was alone and asleep and that he probably would have struck him or startled him, and that as a result of being so startled that Mr. Scoggins would jump from or start up in his bed, and unless you find all of these things from the evidence, it shall be your sworn duty to find for the defendant."

It is argued (1) that the part of the instruction which told the jury that, "the permitting of sale of papers in

the hospital by newsboys to the patients and families of the patients was not negligence in itself," was peremptory in character and ignored the known condition of the appellant and the capacity of the newsboy who is alleged to have entered the hospital room; and (2) that the part of the instruction which relates to the foreseeability of the consequences of the alleged negligent failure of the defendant to prevent the newsboy from entering the hospital room, was erroneous, in that it told the jury that the defendant could not be held liable unless the jury found that the defendant could have foreseen the particular consequences of its negligent failure to prevent the newsboy from entering the hospital room.

The instruction is erroneous and should not have been given in the form requested. ■■ ■ In the case of Tri-State Transit Co. v. Martin, 181 Miss. 388, 179 So. 349, this Court said:

"The rule is settled in this state that, when an act or omission is negligent, it is not necessary, in order to render it the proximate cause, that the actor could or might have foreseen the particular consequence or precise form of the injury, if by the exercise of reasonable care he might have foreseen or anticipated that some injury might result. Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 332, 54 So. 890."

■■ ■ But not every erroneous instruction requires a reversal of the judgment or the granting of a new trial. The rule is well settled by the decisions of this Court that all of the instructions must be read and considered together; and, if the instructions, when read and considered as a whole, contain a fairly consistent statement of the law, the judgment will not be reversed because of errors in particular instructions, unless the errors are of such nature as to mislead the jury as to the real issues upon which they are to pass. Louisville & N. R. Co. v.

Cuevas, 162 Miss. 521, 139 So. 397; Metropolitan Life Ins. Co. v. Moss, (Miss.) 192 So. 343.

In the plaintiff's first instruction, the jury was told that the defendant corporation was liable in damages to hospital patients "for injuries resulting from negligence, if any, of its nurses and other employees, and that plaintiff was admitted to defendant's hospital under an obligation, owed him by the defendant and its employees, that he receive such reasonable care and attention for his safety as his mental and physical condition, if known to the defendant or its nurses or other employees, may require."

In the plaintiff's second instruction, the jury was told that, "the plaintiff had a right to expect and receive from the defendant and its employees reasonable skill and care to protect him, in proportion to the physical or mental ailments suffered by plaintiff, if any, rendering him unable to look after his own safety, and if you further believe from a preponderance of the evidence that while the plaintiff was a bed patient in a private room in defendant corporation's hospital recovering from an eye operation, receiving medicines and treatment and care from employees of defendant, and under the care of said defendant's employees, that said defendant's employees, or some, or one of them, negligently failed to exercise such reasonable skill and care as was required under the circumstances, and that they negligently permitted, or failed to prevent, a newsboy from entering plaintiff's room in said hospital, and slap or strike plaintiff, who was asleep, on the leg, startling him, and causing him to jump and fall out of bed, thereby causing a hemorrhage in his left eye, and that he suffered damage therefrom, then you shall find for the plaintiff."

The defendant's instruction was designed to qualify the rule stated in the plaintiff's instructions by making it clear that the defendant hospital was not required to guard against or take measures to avert that which,

under the circumstances, was not likely to happen, or which a reasonably prudent person under the circumstances would not anticipate as likely to happen.

 █ The rule is well settled that, to recover in an action of this kind, it is necessary that the plaintiff show not only that the defendant was guilty of negligence, but also that the negligence alleged was the proximate cause of the injury. █ And, in order to establish that a negligent act or omission was the proximate cause of an injury, it must be shown that the injury was foreseen, or that it reasonably should have been foreseen, as the natural and probable result of the negligence. 38 Am. Jur. 696, Negligence, par. 50.

In Sturdivant v. Crosby Lumber & Manufacturing Co., 218 Miss. 91, 65 So. 2d 291, the Court said:

"In order that a person doing an act which results in injury to another shall be liable for it, the act must have been of such character and done in such a situation that by the usual course of events some injury, not necessarily the particular injury, would result. Cumberland Tel. & Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890 (1910). The attendant circumstances must be such that an ordinarily prudent man ought reasonably to have anticipated that some injury would probably result from the act done."

It was perhaps error for the court to say in the instruction complained of that, to constitute negligence the jury must find that the defendant could have or should have foreseen "that the newsboy would probably have entered the hospital room of Mr. Scoggins while he was alone and asleep and that he probably would have struck him or startled him, and that as a result of being so startled that Mr. Scoggins would jump from or start up in his bed." But the language used in that part of the instruction is almost an exact copy of the language used in the plaintiff's second instruction in describing the acts of the newsboy, which the plaintiff alleged re-

sulted in his injury. The instruction complained of did not tell the jury that they must find that the defendant could have and should have foreseen the particular injury complained of, or the exact manner in which it was incurred; and when all of the instructions are read together, we do not think that the jury could have been misled by any improper wording of the instruction.

■■ ■ It is next argued that the court erred in refusing to grant the following instruction requested by the plaintiff:

"The Court instructs the jury for the plaintiff, E. T. Scoggins, that, even though you believe, from a preponderance of the evidence that the injury, if any, to the plaintiff, was caused by the concurring negligence of the defendant's employees and a newsboy, the defendant corporation is liable to the same extent as though the injury, if any, had been caused by the defendant's negligence alone."

But we think there was no error in the court's refusal to grant that instruction. The newsboy was not sued as a codefendant and it was not claimed that any of the hospital employees entered the hospital room with the newsboy, or had any part in the creation of the disturbance complained of.

■■■ Finally, it is argued that the court erred in refusing to grant the plaintiff's request for an instruction peremptorily directing the jury to find for the plaintiff and to assess his damages in such amount as they believed from the evidence would compensate him for his injury.

But we think there was no error in the court's refusal to grant the peremptory instruction requested by the plaintiff on the issue of legal liability. There was a direct conflict in the testimony of the plaintiff and the testimony of Mrs. Little, the nurse on duty at the time the newsboy is alleged to have entered the plaintiff's hospital room, on the question as to whether any

such incident actually occurred; and the court very properly submitted that issue to the jury. Other questions for the jury to decide were, whether, if such incident did occur, the defendant corporation and its employees were negligent in permitting the newsboy to enter the hospital room of the plaintiff, and, if so, whether such negligence was the proximate cause of the plaintiff's injury. The plaintiff was not entitled to a peremptory instruction directing the jury to return a verdict in his favor.

We find no reversible error in the record, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.