Debra Ann SMITH et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3228.

United States District Court
S. D. Mississippi, S. D.

March 21, 1967.

Jacob D. Guice, Biloxi, Miss., for plaintiffs.

Robert Hauberg, U. S. Atty., Jackson, Miss., for defendant.

WILLIAM HAROLD COX, Chief Judge.

The three very young children and the husband as plaintiffs sue for the death of Mrs. Elizabeth Smith at the United States government hospital at Keesler Air. Force Base on December 6, 1965. This twenty-four year old woman entered this government hospital on November 30 and was operated on for gallbladder trouble and her appendix was removed on the morning of December 1, 1965. The husband was a medical records clerk in the service at Keesler Hospital at that time. The operation was

done very successfully and satisfactorily. During the evening after the operation about 10:00 o'clock, the deceased became very nauseated, as is usually the case after such an operation.[1] The doctor in charge of the patient ordered her given ten millegram (m.g.) dosage of compazine. Her extensive hospital records did not reveal any untoward experience with or idiosyncrasy for this family of drug. The doctor in charge thought that it would be necessary to administer the maximum recommended dosage. The manufacturer recommends a dosage of five to ten m.g. This first dose of this medicine resulted in side effects at about 1:30 A.M. on December 2, 1965, which were noticed by the registered nurse on duty in this intensive care ward. The patient was frothing at the mouth and experiencing a sort of seizure which the doctors called a spasm. Various tests were immediately made in an effort to determine the cause of her condition.[2] Her doctor (Rutherford) was called at 3:30 A.M. on December 2 and arrived at her bedside in about fifteen minutes. This doctor thought that she was experiencing a reaction to compazine. He immediately gave her phenobarbital as an antidote for compazine. One experienced and knowledgeable doctor said that compazine should never be given any patient under any circumstances within twenty-four hours after such an operation; and that the drug was lethal when given within that time, as recognized by most informed doctors and hospitals.[3] Keesler Hospital is a well run, well managed and well supervised government

hospital; and has received a merit award for excellence within recent months. It is in the same bracket and group of hospitals as is Touro Infirmary in New Orleans.

The evidence does not reveal any known method of determining in advance as to the idiosyncrasies of a patient to this drug. This well informed and highly skilled doctor said that a delay longer than twenty minutes in administering an antidote after a reaction to compazine would be dangerous and probably result in fatality. She was given an antidote for that drug about 4:00 A.M. on December 2, 1965. She did not reach the point of last return until about 7:30 A.M. on December 2, 1965, but died early in the morning of December 6, 1965. Dr. Rutherford operated. Dr. John Floyd (a Colonel and Board Certified surgeon) assisted. Dr. Preston (a Major) gave anaesthetic. All of them concurred in the order for compazine to be given to allay nausea when it occurred. Mrs. Smith was operated on during the morning of December 1, 1965 and did not become nauseated until very late that night when the drug was administered.

There appears to have been nothing wrong with this operation. It was skillfully done in an excellent manner. The amount of this dosage is not criticized. It was administered about twelve hours after the operation. The Keesler doctors said that they had used the drug many times in the same manner, and for the same purpose on many patients with no side effects. The literature of the manufacturer accompanying the package

1. Patient was given pain drug (demoral) at 5:15 P.M. on December 1, 1965. The operation was conducted under a general anaesthetic.

2. Dr. Kyker was called by the nurse and arrived in about five minutes. Dr. Courey was called and arrived in about fifteen minutes. They thought the patient was suffering side effects from compazine but were not sure. They gave patient every possible attention and decided that another sedative (antidote) was not advisable if it could be avoided; and they had hopeful signs in the patient's condition which encouraged them to make blood tests while they waited and hoped.

3. Compazine has been manufactured and marketed by a reputable pharmaceutical firm since 1957. Literature claims its use in 12,000,000 cases. It is recommended as a strong tranquilizer to prevent and to allay nausea. Nothing in the literature indicated any extreme danger or fatal effect in its use, but advised of possible side effects. The Court is not advised of any other case where death has probably resulted from its use.

containing the drug did not contain any such warning as that the drug might be lethal if given within a certain time after the operation. The drug was described by some of the doctors as a tranquilizer. One of the doctors said that it was used principally by psychiatrists. The drug has the possible effect of blocking the airways and preventing entry of oxygen to the brain with rather serious effect upon this vital organ. This ten m.g. dose of compazine was administered in the muscles of the patient at 10:00 P.M. on December 1, 1965.[4] The autopsy made by the Board at Keesler in effect said that death was *possibly* due to side effects of compazine.[5] This drug is manufactured by a reputable drug house and has been in common use throughout the country since 1957. The mortality rate in gallbladder operations on patients of the age of Mrs. Smith is 1 to 2%. An appendectomy is less than 1%. Mrs. Smith was twenty-four years of age, five feet two inches tall and weighed 139 pounds.

■■ The proof shows to the satisfaction of the Court that Mrs. Smith died from side effects occasioned by compazine.[6] She had an idiosyncrasy to the drug which was not known and could not have been known to the hospital, or the doctors. This was her first and only dose of that drug at this institution; and it was administered at 10:00 P.M., and her reaction developed early the next morning.[7]

■ It is not easy to disassociate our hindsight from our foresight in making pronouncements and expressing professional judgment about incidents of this kind. This hospital and its staff had used this drug on many such occasions before, and still use it. The doctors in most instances are young and with limited experience, but they seemed to have done as well as any doctor at any other comparable hospital anywhere would have done under like circumstances. They are criticized for not calling an available neurologist on the staff, but if that is not hindsight it may simply suggest a possibility after the fatality which may, or not have been helpful, if these doctors had to diagnosis this trouble and cure it within twenty minutes as suggested. They delayed in giving an antidote for compazine until they first determined that compazine was really the trouble. They may not be reasonably criticized for that course of action. "When a physician undertakes to perform the duties of his profession, he impliedly warrants that he possesses and will use the requisite skill and care ordinarily possessed and used by others in his profession, but unsuccessful results of his treatment does not give rise to a presumption of negligence." Rainey, et al. v. Horn, 221 Miss. 269, 72 So.2d 434. It is the universal rule in tort actions that mere proof of injury complained of raises no presumption of negligence. Waddle v. Sutherland, 156 Miss. 540, 126 So. 201. The doctrine of res ipsa loqui-

---

4. This dosage was deemed necessary because it was important that the patient not become so nauseated as to damage her surgery. The drug in the muscle was stronger and its effect more immediate than if administered orally. The manufacturer's recommended dosage was five to ten m.g.

5. The death certificate recited that patient's death was "due to unknown cause." The Court finds that she died because of an unknown idiosyncrasy to compazine.

6. Nobody knew or could have reasonably known at that hospital on December 1, 1965 that this patient would experience such an immediate and fatal reaction as she did to this drug. Nobody was wanton or careless or reckless or indifferent for her welfare, or well-being. The hospital was not an insurer, but was simply required to use reasonable scientific care for her safety under the circumstances.

7. The patient was in the intensive care ward at all times after the operation and after taking the compazine; and was at all times under the watchful care of a registered nurse. These doctors and nurses never ceased working to save the life of their patient. Their efforts were to no avail. She died on the morning of December 6, 1965.

tur does not apply where it is shown that every reasonable professional attention was given the patient and that injury resulted from an allergy or idiosyncrasy to an ordinarily and reasonably safe drug. DeLaughter v. Womack, 250 Miss. 190, 164 So.2d 762.

The defendant was not negligent in the administration of this drug or in not giving the patient phenobarbital before 4:00 A.M. that morning. They thought but were not sure that she was having a reaction at 1:30 A.M. Her condition did not indicate immediate peril and did not indicate the advisability of an additional drug at the time under the circumstances. There was nothing that was done or happened which was negligent when viewed from the standpoint of a reasonably prudent person at that time. It must be understood that this hospital and its doctors were not insurers of the absolute safety of their patients or that such treatment would be absolutely and unconditionally free of any possible errors or mistakes. As said in Billups Petroleum Co. v. Entrekin, (1950) 209 Miss. 302, 46 So.2d 781: "Foreseeability, as respects liability of the negligent person, does not include events which are bizarre or so unique as to be without the the contemplation of one reasonably prudent." In Sturdivant v. Crosby Lumber & Manufacturing Company, 218 Miss. 91, 65 So.2d 291, it is said: "A person charged with negligence in that he should have anticipated the probability of injury from an act done by him is not bound to a prevision or anticipation which would include an unusual, improbable or extraordinary occurrence, although such happening is within range of possibilities. The standard for determining in a negligence case whether the actor should have foreseen the probability of harm from his conduct is an external one, from the point of view of the actor prior to the occurrence." Faulkner Concrete Pipe Company v. Fox, 248 Miss. 50, 157 So.2d 804, says: "As a general rule, negligence cannot be predicated on an act or omission which would not lead an ordinarily reasonably, prudent man to apprehend danger from it, or unless it might reasonably be foreseen that injury would naturally or probably follow from such an act. Hebert v. Lenart, Miss., 153 So.2d 658; Mauney v. Gulf Refining Company, 193 Miss. 421, 8 So.2d 249, 9 So.2d 780; City of Greenville v. Laury, 172 Miss. 118, 159 So. 121; Burnside v. Gulf Refining Company, 166 Miss. 460, 148 So. 219; 38 Am.Jur., Negligence, § 24, p. 667."

This is a very unfortunate and very sad and tragic incident, and the sympathy of everybody goes out to this little family which has lost this loved one. But sympathy is not a motivating influence or a proper ingredient of a decision in any case. Although Dr. Rutherford knew that compazine had some possible side effects, he was confronted with the necessity for giving this woman a drug strong enough at the time to immediately alleviate nausea to prevent disturbance of or injury to his surgery. It behooves the plaintiffs here to show this Court by the greater weight of the more convincing evidence that this institution was negligent in giving this first proper dosage of this recognized and widely accepted drug under the circumstances, and that such negligence caused her death. This Court is constrained to the view under the circumstances that the plaintiffs have not met that burden. It is not enough to meet that burden to simply show that this patient died as she did as a result of the side effects of this drug. It is not shown that these doctors, or this hospital knew, or should have known that this dosage of that drug at that time under such circumstances would ultimately prove fatal to this patient.

This Court has full jurisdiction of the parties and the subject matter of this suit under the Federal Tort Claims Act. In this case, if the United States were a private individual, it has not been shown that it was guilty of any negligence which proximately caused the death of Mrs. Elizabeth Smith. These doctors in this government owned and operated hospital were not negligent in

administering compazine in the patient's muscles twelve hours after this operation, and in not administering an antidote for compazine immediately and before 4:00 A.M. on December 2, 1965.

The complaint is thus without merit and will be dismissed at plaintiffs' cost. A judgment accordingly may be presented.