388 So.2d 871 (1980)
Edward E. CASH
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY and Columbus Scrap Material Company, Inc.
No. 51824.
Supreme Court of Mississippi.
September 17, 1980.
Ramsey, Bodron, Thames & Robinson, Bobby D. Robinson, Vicksburg, for appellant.
*872 Ward, Martin, Terry & Way, Burkett H. Martin, Heidelberg, Woodliff & Franks, W. Swan Yerger, Keith E. Henderson, Jackson, for appellees.
Sherwood W. Wise, Wise, Carter, Child & Caraway, Jackson, O. Winston Cameron, Deen, Cameron, Prichard & Young, Meridian, Erskine W. Wells, Wells, Wells, Marble & Hurst, Jackson, David Cottrell, Jr., Eaton, Cottrell, Galloway & Lang, Gulfport, Tally D. Riddell, Quitman, Francis T. Zachary, Hattiesburg, Fred B. Smith, Ripley, amicus curiae.

ON PETITIONS FOR REHEARING
ROBERTSON, Presiding Justice for the Court:
The petition for rehearing filed by Illinois Central Gulf Railroad Company is granted, the original opinion withdrawn, and the judgment of the Circuit Court of Warren County, based on the jury verdict in favor of Defendant Illinois Central Gulf Railroad Company, is affirmed.
The petition for rehearing filed by Columbus Scrap Material Company is denied. This Court adheres to its ruling that an additur, increasing the $23,052.21 jury verdict to $50,000 and then applying the finding of the jury that plaintiff was 50% contributorily negligent, thus reducing the total judgment of $50,000 to $25,000, should be made. If the additur is accepted by Columbus Scrap Material Company within 15 days, then the judgment is affirmed as to Columbus Scrap Material Company. If the additur is not accepted, then the case as to Columbus Scrap Material Company will be reversed and remanded for a new trial on the question of damages alone.
The original opinion is withdrawn, and the following opinion substituted therefor:
Plaintiff, Edward E. Cash, brought suit against defendants, Illinois Central Railroad Company (ICG) and Columbus Scrap Material Company, Inc. (CSMC), in the Circuit Court of Warren County, for damages sustained by him when he stepped off of ICG's lead gondola car onto a piece of scrap metal and injured his left knee.
Cash was 42 years of age at the time of his injury. He had worked mostly as a switchman for ICG since October, 1948. About 2:30 P.M., August 16, 1973, Cash was on the lead gondola car as a lookout and signalman for the engineer as he pushed three or four railroad cars along the spur track in CSMC's yard. It was Cash's duty to look ahead to see if there was any scrap metal on the railroad right-of-way, which would block the railroad cars. If there was, he was to advise the engineer by radio to stop the train. It was also his duty as switchman to signal the engineer to stop the line of cars a few feet before it was to be coupled with a filled gondola car, and then Cash was to make the coupling between the filled and empty cars. Cash saw some scrap metal on the railroad right-of-way which he thought might hit his leg, so, as the line of cars proceeded at two-to-five miles an hour, Cash radioed the engineer to stop. As he stepped off of the ladder on the lead car, he inadvertently stepped on another piece of scrap metal and twisted his left knee.
Cash charged in his declaration that ICG breached its absolute, continuing and non-delegable duty to exercise reasonable care to furnish him with a safe place to work, and that ICG's negligence constituted in whole or in part the direct and proximate cause, or a contributing cause, of Plaintiff's accident and injuries.
He charged that he was a business invitee of Columbus Scrap, and that CSMC owed him the duty:
"[T]o exercise reasonable care to provide a safe place to work and to refrain from allowing the accumulation of scrap material in the pathways where they knew or by the exercise of reasonable care should have known that the Plaintiff would be required to work in performing his switching duties and rendering service [to Columbus Scrap Material Company]."
After a full trial, the jury returned these two separate handwritten verdicts:
"We, the Jury, find for the Plaintiff against Columbus Scrap Metal and assess his damages in the amount of $23,052.21.

*873 We further find the Plaintiff guilty of contributory negligence & reduce the amount awarded 50%."
"We, the jury, find for the Defendant, Illinois Central Gulf Railroad."
In accordance with the jury verdict against CSMC, the court reduced the $23,052.21 verdict to $11,526.11. A motion for additur was made on May 12, 1978, which motion was overruled by the court on September 12, 1978.

I.
Although appellant has assigned six errors committed by the trial court as to ICG, he concentrates on his second assignment of error, that
"THE COURT ERRED IN ALLOWING DEFENDANT RAILROAD INSTRUCTION NUMBER SIX WHICH INCORRECTLY APPLIED ASSUMPTION OF RISK AS A DEFENSE."
ICG's instruction D-6 reads:
"The Court instructs the jury that if you believe from a preponderance of the evidence that Plaintiff knew that there was debris alongside the railroad track, or in the exercise of reasonable care should have known of its presence, and that in stepping on such debris he did not exercise reasonable care and precaution for his own safety, then he was guilty of contributory negligence. The Court further instructs you that if you believe from a preponderance of the evidence that such contributory negligence on his part, if any, was the sole, proximate cause of the accident, then it is your sworn duty to return a verdict for the Defendant Railroad."
Cash contends that D-6 is an assumption of risk instruction couched in contributory negligence terminology and thus violated Section 54 of the Federal Employers' Liability Act, which provides:
"In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. ..." (Emphasis added).
Appellant argues that by using the word "contributory" in Instruction D-6 ICG is admitting some fault on its part, and therefore appellant's contributory negligence could not have been the "sole, proximate cause". Cash contends that D-6 confused the jury and caused them to inadvertently bring in a verdict for defendant railroad company.
Plaintiff requested and was granted instruction 4, which reads:
"The Court instructs the Jury that under the Federal Employers' Liability Act, the Plaintiff cannot be held to have assumed the risk of injury by accepting employment with the Defendant, Illinois Central Gulf Railroad Company, and if you find by a preponderance of evidence that the Defendant, Illinois Central Gulf Railroad Company, was negligent in failing to provide a reasonably safe place to work, and you further find that the Defendant's negligence, if any, caused or contributed in whole or in part to the cause of Plaintiff's injuries, if any, your verdict shall be for the Plaintiff and against Defendant, Illinois Central Gulf Railroad Company, in an amount of damages, if any, which may be shown by a preponderance of the evidence that he has incurred." (Emphasis added).
Plaintiff thus was allowed by the court to instruct the jury in clear, specific, and forceful language that not only did Cash not assume the risks of his employment but also that if ICG's negligence "caused or contributed in whole or in part to the cause of Plaintiff's injuries, if any, your verdict shall be for the Plaintiff and against Defendant, Illinois Central Gulf Railroad Company."
Plaintiff was granted 12 other instructions. Plaintiff's Instruction P-1 read:
"The Court instructs the Jury that at the time of Plaintiff's injuries the Illinois *874 Central Gulf Railroad Company was under a continuing and non-delegable duty to exercise reasonable care to furnish the Plaintiff with a reasonably safe place to work, including safe pathways upon which to walk and work, and that such duty extended to any place the railroad sent him to work regardless of whose property he went on to perform that work.
"If you believe by a preponderance of the evidence that the Defendant, Illinois Central Gulf Railroad Company negligently failed to exercise reasonable care to furnish Plaintiff, Edward E. Cash, with a safe place to work and that such negligence, if any, contributed in whole or in part to cause his injuries, your verdict shall be for the Plaintiff and against Illinois Central Gulf Railroad Company."
Plaintiff was also granted instruction P-3, which read:
"The Court instructs the Jury that under the Federal Employers' Liability Act, the employee, Edward E. Cash, had a right to assume that his employer, Illinois Central Gulf Railroad Company, had exercised reasonable care with respect to providing a reasonably safe place to work, and if you find from a preponderance of all the evidence in this case that the Defendant, Illinois Central Gulf Railroad Company, negligently failed to provide a safe walk-way for its employee, Edward E. Cash, and that his injuries, if any, resulted in whole or in part as a result of said failure on the part of the Defendant, Illinois Central Gulf Railroad Company, then your verdict shall be for the Plaintiff, Edward E. Cash." (Emphasis added).
Plaintiff's instruction 18 advised:
"The Court instructs the jury that the Defendant, Illinois Central Gulf Railroad Company, and Defendant, Columbus Scrap Material, Inc., are relying upon a defense of contributory negligence on the part of the Plaintiff.
"However, the Court further instructs the jury that the defense of contributory negligence is an affirmative defense, and thus the burden of proof is on the Defendant, Illinois Central Gulf Railroad Company and Defendant, Columbus Scrap Metal, Inc., to establish by a preponderance of evidence that the Plaintiff is guilty of contributory negligence, if any." (Emphasis added).
Both ICG and CSMC were granted instructions that, if the jury found that plaintiff's negligence, if any, was a contributing cause of the accident, the jury could reduce any amount awarded in the proportion that his negligence contributed to the accident.
In Barnett v. Terminal Railroad Association of St. Louis, 228 F.2d 756 (8th Circuit, 1956), cert. den. 351 U.S. 953, 100 L.Ed. 1476, 76 S.Ct. 850, the Court said:
"While contributory negligence is not a defense to an action brought under the Federal Employers' Liability Act yet where the negligence is that of the employee alone there can be no recovery. In Chicago, St. P., M. & O.R. Co. v. Arnold, supra, [8th Cir., 160 F.2d 1002, 1006] this court approved as proper an instruction that `if the jury found that the plaintiff was guilty of negligence and that his negligence was the sole proximate cause of the accident and his injuries' the verdict should be for the defendant." 228 F.2d at 761-62. (Emphasis added).
Appellant contends that Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943), sheds light on the problem with which we are confronted. Tiller is not applicable. Tiller reached the United States Supreme Court on a directed verdict for the defendant railroad company. The Supreme Court reversed, holding that it was a question for the jury.
Again appellant contends that Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), is applicable. Rogers is clearly distinguishable. In Rogers there was a jury verdict for the plaintiff. The Supreme Court of Missouri, 284 S.W.2d 467, reversed "upon the ground that the petitioner's evidence did not support the finding of respondent's liability." The United States Supreme Court granted certiorari to consider the question of whether *875 the decision invaded the jury's function. Thus the main question in Rogers was whether there was sufficient evidence for submission of the case to the jury. The Supreme Court of the United States decided that there was, and reversed and remanded the case. The U.S. Supreme Court found no fault with an instruction similar to ICG's Instruction D-6. That Court said:
"The jury was instructed to return a verdict for the respondent if it was found that negligence of the petitioner was the sole cause of his mishap. We must take it that the verdict was obedient to the trial judge's charge and that the jury found that such was not the case but that petitioner's injury resulted at least in part from the respondent's negligence." 352 U.S. at 505, 77 S.Ct. at 447-48, 1 L.Ed.2d at 498-99.
Plaintiff and both Defendants were careful to see that the jury was fully, completely and accurately instructed as to the law on their opposing theories of liability vel non. It is elementary that all instructions given the jury by the trial court must be read and considered together. Scoggins v. Vicksburg Hospital, Inc., 229 Miss. 770, 91 So.2d 837, 70 A.L.R.2d 368 (1957).
By its very actions in bringing in two separate and distinct verdicts, the jury clearly demonstrated that it had considered the instructions as a whole and fully and accurately understood the law. By its verdict for ICG, the jury found that the railroad had fulfilled its duty of exercising reasonable care to furnish the plaintiff a reasonably safe place to work and that, as to the railroad, the plaintiff's negligence was the sole, proximate cause.
It was a different story as to Columbus Scrap Material Company. The jury, in its separate handwritten verdict, found that the plaintiff was guilty of 50% contributory negligence. MCA section 11-7-17 (1972) provides:
"All questions of negligence and contributory negligence shall be for the jury to determine."
In affirming a jury verdict for the railroad company, the Supreme Court of Mississippi, in Orr v. Columbus & Greenville Ry. Co., 210 Miss. 63, 48 So.2d 630 (1950), said:
"The initial inquiry in every negligence case is not whether the plaintiff was negligent, but whether the defendant was. If the defendant is held not to have been negligent, the first bridge to be crossed collapses and the case ends. Upon a contrary finding it is elemental that such negligence must have proximately caused or contributed to plaintiff's injury. If such causation is not found, the case collapses at this stage. If the injury is found to have been caused solely by the negligence of the plaintiff, this is of necessity an adjudication that the conduct of the defendant, even though negligent, contributed not at all to the injury.
"We are of the opinion that the body of instructions properly submitted these issues and tests of liability, and that the record discloses no reversible error." 210 Miss. at 70, 48 So.2d at 633. (Emphasis added).
We affirm the jury verdict for the defendant, Illinois Central Gulf Railroad Company.

II.
Columbus Scrap, in its single cross-assignment of error, contends that "the trial court erred in overruling the Peremptory Instruction requested by Defendant, Columbus Scrap Material Company, Inc."
As stated heretofore, there was conflicting evidence and it was clearly a case for the jury to decide. The trial court was correct in overruling the peremptory instruction and in submitting this case to the jury to decide.

III.
After carefully considering the proof of damages and the fact that the plaintiff did file a motion for additur which the trial court denied, we are of the opinion that the jury verdict was contrary to the overwhelming weight of the evidence. It was virtually undisputed that from the time of *876 his injury until the time of trial plaintiff had lost $89,368.68 in wages. Plaintiff was a 42-year-old man at the time of his injury. He had finished the eighth grade in school. He had worked for the railroad company since October, 1958, virtually all of his working life. The work of a railroad switchman was and still is heavy physical work, and this was all the plaintiff knew. He testified that he had tried but could not continue to do the heavy physical work of a switchman. He testified of his many attempts to find work that he could do, and his continuing failure to find such a job. When he could no longer work as a switchman for the railroad, he not only lost wages but he also lost numerous fringe benefits. He had been forced to convert his group health insurance to a personal plan, which cost him $98.00 a month.
Dr. John G. Caden, orthopedic surgeon, operated on Cash and removed the medial knee cartilage which was torn in the accident. Dr. Caden further found that Cash would not be able to return to his work as a switchman because of a combination of disabilities involving 15% permanent disability to the knee from the injury and a pre-existing arthritic condition known technically as chondromalacia.
After considering all of these elements of damage, as well as his uncontradicted testimony of continued pain and suffering and his limited ability to do physical work around his home and for his family, we are of the opinion "that the damages awarded were contrary to the overwhelming weight of credible evidence," [MCA section 11-1-55 (Supp. 1979)], and that there should be an additur so as to increase the total verdict to $50,000. Then, in accordance with the jury's verdict finding Cash 50% contributorily negligent, the total verdict of $50,000 should be reduced to $25,000. CSMC, of course, would then have the option of accepting or rejecting this additur. In the event CSMC does not accept this additur within 15 days from the date of this opinion, this cause will be reversed as to CSMC and remanded for a new trial on damages only.
AFFIRMED AS TO ILLINOIS CENTRAL GULF RAILROAD COMPANY; REVERSED AND REMANDED FOR A NEW TRIAL ON DAMAGES ONLY AS TO COLUMBUS SCRAP MATERIAL COMPANY, INC., UNLESS ADDITUR IS ACCEPTED WITHIN 15 DAYS; AFFIRMED ON CROSS-APPEAL OF COLUMBUS SCRAP MATERIAL COMPANY, INC.
SMITH, P.J., and WALKER, BROOM and LEE, JJ., concur.
LEE, J., and SMITH, P.J., specially concur.
BOWLING and SUGG, JJ., dissent as to part I but concur as to parts II and III.
COFER, J., dissents.
PATTERSON, C.J., took no part.
BOWLING, Justice, dissenting:
I respectfully dissent from the majority opinion affirming the verdict for appellee Illinois Central Gulf Railroad Company.
In my humble opinion, the basic error in the majority opinion is that it does not recognize that the suit against the railroad company was brought solely under the Federal Employer's Liability Act [45 U.S.C.A., §§ 51-56], and this Court is bound by the Federal Court interpretations of that act for many years. If appellant Cash had been injured while employed in this State by an employer other than a railroad company, his claim would, of course, have had to be made under the provisions of the Mississippi Workmen's Compensation Act. The Federal statute completely preempts the compensation field in the case of injuries to railroad company employees and, as shown by the many cases over the years interpreting the Federal act, the courts are required to interpret it liberally, the same as we are required to interpret the Mississippi Workmen's Compensation Act. In both, doubts legally should be resolved in favor of compensating an injured employee.
The basic provision of the Federal Act [commonly known as the FELA] is that the *877 injured employee does not assume a risk incident to his employment in any case where such injuries resulted in whole or in part from the negligence of any of the officers, agents or employees of the railroad company [§ 54 FELA].
We take no exception to the majority opinion's finding that in the event the injury was incurred solely as a result of negligence of the injured employee, he is not entitled to recover anything. A reading of defendant's instruction D-6, with which we are concerned here, clearly shows that the instruction did not refer to sole negligence by the employee. It referred to his alleged "contributory" negligence which, without doubt, assumes that the railroad company also was negligent. With deference, the cases cited in the majority opinion deal with instructions to the jury as to the injured person's "sole" negligence and not to his "contributory" negligence. An instruction involving the injured employee's "contributory" negligence, as hereinbefore set out, obviously assumes some negligence on the part of the employer and under the comparative negligence doctrine, both in this state and in FELA, the only time this instruction would be proper would be when the injured person's total recovery would be reduced in proportion to his negligence. There is no such qualification in defendant's instruction No. 6. With deference, this instruction, along with the others mentioned in the majority opinion, could serve only to confuse the jury rather than charge the jury correctly as to the law involved.
The point I am making here was set out by the Fifth Circuit Court of Appeals in the case of Almendarez v. The Atchison, Topeka and Santa Fe Railway Company, 426 F.2d 1095 (1970), where the Court said the following:
The railroad first contends that the court erred in refusing to grant its request for an instruction on the defense of sole proximate cause. The requested instruction reflected the railroad's main line of defense: that the plaintiff's conduct in walking backward and failing to keep a proper lookout was contributorily negligent to the extent that it constituted the sole cause of the injury.
We agree with the plaintiff that the railroad's theory to support its requested instruction is an attempt to engraft the common-law doctrine of sole proximate cause onto the Federal Employers' Liability Act. The standards of liability for negligence under the Act must not be confused with those under the common law. This proposition, in the light of a requested instruction on sole proximate cause which was granted, was well stated by Judge Brown in Page v. St. Louis Southwestern Ry., 349 F.2d 820 (5th Cir.1965):
"[O]rdinarily in FELA cases there is really no place for this issue in the jury submission as such. * * * This effort to cross-examine the jury * * * leads only to confusion and a proliferation of metaphysical terms scarcely understandable to the most astute scholar. * * *
"Of course the substantive law recognizes that if the negligence of the Employee is the sole cause of the injury or death, there is no liability. (citing cases). This is sometimes spoken of as the employee's contributory negligence being the sole proximate cause, but this is both an inaccurate use of the term `contributory' and seems to be wholly unnecessary since a jury, honestly determining that the injured employee's actions were the sole cause of injury, necessarily finds (either on a general charge or by special interrogatories) that no act of the railroad, even though found to be negligent, played any part in bringing about the injury. * * * We ought to avoid those practices which `distract the jury's attention from the simple issues of whether the carrier was negligent and whether that negligence was the cause, in whole or in part, of the plaintiff's injury.'" 349 F.2d 826-827.
In regard to the above pronouncement of the Fifth Circuit, the same principles are laid down in Barnett v. Terminal Railroad Association of St. Louis, 228 F.Rep.2d 756 (5th Cir.1956); Rogers v. Missouri Pacific *878 Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), and Tiller v. Atlantic Coastline R.R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943).
Therefore, I am of the opinion that the granting of the railroad company's instruction No. 6 constitutes reversible error. I do not believe that this Court can interpret the Federal Employer's statute involving railroad employees by allowing the jury to be instructed that "contributory" negligence completely bars the employee when, as stated, this definitely adjudicates that the employer was guilty of some negligence. Also, as hereinbefore seen, with this undisputed situation, the injured employee is entitled to recover if the employer is guilty of any negligence that contributed to the injury. As stated at the outset, this situation is brought about by the provision in the Federal statute of many, many years completely abolishing any assumption of the risk by the employee. The majority opinion abolishes the quoted section of FELA provisions, which is not our prerogative.
I am of the opinion that the erroneous instruction granted the railroad company was responsible for the verdict of the jury exonerating the railroad company. It is noted that Columbus Scrap obtained a proper instruction on contributory negligence, as follows:
The court instructs you that in the event that you should find that the plaintiff was negligent, as defined in any of the other instructions herein, and that such negligence proximately contributed to his accident and injuries, then it will be your sworn duty as jurors to reduce the damages which you would otherwise award him in such proportion as the negligence of the plaintiff bears to the entire negligence involved.
The jury found plaintiff was guilty of contributory negligence and reduced the verdict by the amount of the contributory negligence found by it. If the instruction for the railroad company had been couched in the same language as that of Columbus Scrap, I feel that the jury would have found for the plaintiff against the railroad company. The railroad company's instruction is misleading because it authorizes the jury to find contributory negligence is a bar to recovery against the railroad company.
I would reverse as to the employer railroad company and remand the cause for a new trial under proper and nonmisleading instructions.
SUGG and COFER, JJ., join in this dissent.
LEE, Justice, specially concurring:
I concur in the majority opinion.
The appellant contends that Instruction D-6 is erroneous in that the term "contributory negligence" indicated negligence on the part of the railroad company and it then told the jury that, if appellant's contributory negligence was the sole proximate cause of the accident, the verdict should be for the railroad company. He further argues that the instruction confused the jury.
In my opinion, Instruction D-6 should not have been given in the language mentioned. It would have stated the law correctly with the word "contributory" deleted. However, after a careful examination of all instructions, and considering them together, I think that the jury could not have been confused or misled, and that the error was harmless. This is borne out by the fact that the jury found appellant to be guilty of contributory negligence in the amount of fifty percent (50%) as to Columbus Scrap Material Company, Inc., and reduced his damages accordingly.
SMITH, P.J., joins in this opinion.